569 A.2d 741

**Richard Lee GREEN**

**v.**

**STATE of Maryland.**

**No. 922, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 13, 1990.

748

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before MOYLAN, WENNER and FISCHER, JJ.

MOYLAN, Judge.

In the late Professor Irving Younger's classic illustration of forensic imprecision, the trial attorney, pressed to state a reason for objecting to an item of evidence, responds, "Because it is incompetent, irrelevant and immaterial." That objection, of course, embraces the entire law of evidence. In Younger's words, "It says absolutely everything and thereby says absolutely nothing."

In pursuit of greater particularity, the case now before us provides a textbook example of the differences among competence, relevance, and materiality. At issue is an out-of-court assertion which plausibly could have been offered for either of two pertinent purposes. For one of those purposes, the assertion would have been hearsay; as such, it would have been both material and relevant but would also have been incompetent. For the other purpose, the same assertion would have been non-hearsay; in that very different capacity, it would have achieved competence and retained relevance but lost materiality. Either way, it was fatally flawed.

The appellant, Richard Lee Green, was convicted by an Anne Arundel County jury of the armed robbery of a Texaco station in Glen Burnie on June 8, 1988, at approximately 9:25 P.M. At the consolidated trial in this case, the appellant was also being tried for an earlier armed robbery, that of another Texaco station in Ferndale that occurred just 25 minutes before the Glen Burnie robbery. Because of the manner in which a courtroom identification was made by the victim of the Ferndale robbery, however, the trial judge granted a mistrial as to it. Upon this appeal, the appellant raises two contentions:

1. That the trial judge erroneously admitted into evidence an automobile license tag number offered to show probable cause for the appellant's arrest; and

2. That the trial judge abused his discretion in granting a motion for a mistrial as to only one of two consolidated cases.

Because of our disposition of the first contention, the other is moot.

## The Facts

At approximately 9 P.M. on June 8, the armed robbery of the Ferndale Texaco station took place. Martin Springman, the attendant, was robbed of approximately $50 at gunpoint. Immediately after the robbery, a customer known to the attendant as "Al" (in fact, Alphonsis Fredicottis), ran to get a description of the getaway car. Al observed the license tag number and wrote it down on a folder, which he shortly thereafter gave to the police. Al was not a witness at the trial.

Thirty minutes after the Ferndale robbery, Martin Springman was taken by the police to Glen Burnie, where the appellant was then under arrest for the Glen Burnie robbery. In that show-up, Springman identified the appellant as the perpetrator of the Ferndale robbery.

At approximately 9:25 that evening, less than half an hour after the Ferndale robbery, another Texaco station was held up in Glen Burnie. James McMillan, the attendant at that station, was, at gunpoint, relieved of approximately $60 and a pair of gloves. When the appellant was arrested a few minutes after the Glen Burnie robbery and less than a block away, James McMillan was brought to the scene, where he promptly identified the appellant as his robber. McMillan also identified the appellant at trial.

It was Officer Robert Martin who arrested the appellant almost immediately after the Glen Burnie robbery as the appellant's car was stopped for a traffic light next to the Glen Burnie Texaco station. The primary reason for Officer Martin's stopping of the appellant was the police broadcast giving the description of the earlier Ferndale robber, a description of the getaway car, and the license tag number of that car. Approximately 30 minutes after having heard that broadcast, Officer Martin heard the radio report of the Glen Burnie robbery and its similar description of the robber there involved. When Officer Martin spotted the car

bearing the license tag given for the getaway car of the similarly described Ferndale robber, he stopped the car and arrested the appellant.

Following the arrest, a pellet gun, $132 in cash, and various items of clothing were recovered. In short order, both robbery victims arrived at the arrest scene and identified the appellant.

The appellant does not challenge the eminently proper consolidation of the two robberies for trial. The episodes were so intertwined that proof of involvement in either would have been admissible to help prove criminal agency with respect to the other. They were reciprocally relevant for purposes other than the showing of mere criminal propensity. *Harris v. State*, 81 Md.App. 247, 567 A.2d 476, (1989).

### The Writing As An Out–Of–Court Assertion

The only controversy in this case is over the admission into evidence of a piece of paper (possibly cardboard; it is described only as "a folder") bearing the notation "VTB 983." Officer Dennis Matteo testified that he responded to the scene of the Ferndale robbery and took the paper bearing the license number from the customer Al. When the State offered the paper in evidence, the trial judge, over the appellant's objection, admitted it, stating, "I don't think it's hearsay. It's an object ... physical object that was given to [the police officer]." At that point, the trial court seemed to be treating the paper as an item of real evidence rather than as a written assertion.

As a mere physical object, of course, the paper was meaningless and should have been rejected for its irrelevance alone. Without any accompanying explanation, the hieroglyphics contained thereon may have been, for all anyone knew, random scribblings, a winning (or losing) number on the Irish Sweepstakes, an Army serial number, an encrypted message, the combination to one's bicycle lock, or a suite number at the Virginia Tourist Bureau ("VTB").

Without its contextual coloration and devoid of any assertive content, the thing itself had no more meaning than if Al had handed the policeman a used candy bar wrapper. Its only significance was as a recordation of the Maryland license tag number of the getaway car. Its only value lay in that assertive character.

Deferring for the moment the issue of whether it was an out-of-court assertion *offered for the truth of the thing asserted* (and was, therefore, hearsay) or was an out-of-court assertion *offered simply for the fact that it was heard or read* by someone (the police team) and relied upon by them (and was, therefore, non-hearsay), we must first establish that it was, indeed, an out-of-court assertion. There is no difficulty in establishing the forum for the assertion as "out-of-court." It emanated not from a witness on the stand on November 10, 1988, but from Al at the Ferndale Texaco station on June 8, 1988.

As an assertion, it was neither exclusively oral nor exclusively written but a combination of both. Al began the assertion by saying to the policeman, in effect, "This is the Maryland license tag number of the getaway car I observed leaving the robbery scene...." The piece of paper handed to the policeman, in its turn, completed the message by adding, in effect, "... and that Maryland license number was 'VTB 983.' "

The fact that an assertion is wholly or partially in writing rather than oral does not erode its status as an assertion. The treatise writers and the case law alike, largely in the context of defining "hearsay," use the words "assertion" and "statement" essentially interchangeably. Federal Rule of Evidence 801(a) defines "statement":

"A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."

As Judge Eldridge noted for the Court of Appeals, in *Kapiloff v. Locke,* 276 Md. 466, 471, 348 A.2d 697, 700 (1975), "The mere fact that the statement is reduced to

writing does not change its character as hearsay, or bring it within an exception to the hearsay rule." *See also Heil v. Zahn,* 187 Md. 603, 608, 51 A.2d 174, 177 (1947); L. McLain, *Maryland Evidence* § 801.1, at 271 (1987) [hereinafter cited as *McLain* ]. We ourselves observed in *Gray v. State,* 53 Md.App. 699, 712, 456 A.2d 1290, 1298 (1983):

> "[T]he fact that the words on the note were written rather than spoken is of no significance. That a message was sent and was received is the thing of significance, not the medium of the message. If an eavesdropper had overheard the very message that was contained in the note and had testified to that fact in court, the analysis that follows would not be different."

The out-of-court assertion made by Al, partly orally and partly in writing, was, "The driver of the car bearing Maryland tag number VTB 983 is the robber of the Ferndale Texaco station." That assertion might have been offered for two different purposes.

### For the Truth of the Thing Asserted

█ If the out-of-court assertion had been offered for the truth of the thing asserted, it would have been, by definition, hearsay. Its admissibility would have depended upon 1) its relevance, 2) its materiality, and 3) its competence (or trustworthiness).

### A. *Its Relevance:*

*McLain* § 401.1, at 261, defines "relevance":

> "The term 'relevance' refers to the required relationship between the evidence offered and the fact it is offered to prove....
>
> Evidence is relevant if it has any tendency to make existence of a material fact more probable or less probable than it would be without the evidence."

*See also Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582, 585 (1948); *Blondes v. Hayes,* 29 Md.App. 663, 668, 350 A.2d 163, 165–166 (1976); *Williamson v. State,* 25 Md.App.

338, 345, 333 A.2d 653, 657 (1975); *Gray v. State*, 10 Md.App. 478, 487, 271 A.2d 390, 396 (1970).

The fact that the car of which the appellant was found behind the wheel at 9:30 P.M. was the getaway car that had carried the robber from the scene of the Ferndale robbery 30 minutes earlier would have been highly relevant or probative if offered to prove that the appellant had perpetrated the Ferndale robbery. The fact that the appellant, in that car, had perpetrated the Ferndale robbery would have been significantly relevant or probative if offered to prove that the appellant, in the same car, had also perpetrated the Glen Burnie robbery 25 minutes later. The relevance of the out-of-court assertion if offered to prove that the appellant had perpetrated either or both of those robberies would, thus, have been indisputable.

B. *Its Materiality:*

*McLain* § 401.1, at 261, defines "materiality":

"[T]he term 'materiality' refers to the required relationship between that fact and an issue which is the proper subject of proof in the case.

... A material fact is a fact that is of legal consequence to the determination of the issues in the case." (Footnote omitted).

*See also Paige v. Manuzak*, 57 Md.App. 621, 632, 471 A.2d 758, 763 (1984); *Staley v. Staley*, 25 Md.App. 99, 106, 335 A.2d 114, 119 (1975).

Upon the trial of the appellant for the Ferndale robbery, the issue of whether he perpetrated that robbery was quintessentially material; it was, indeed, the ultimate issue in the case. Upon the trial of the appellant for the Glen Burnie robbery, the issue of whether the appellant had perpetrated another robbery of another Texaco station 25 minutes earlier and in the same car would have been significantly material, even if not quite as quintessentially so. Had the out-of-court declaration been offered as relevant evidence to prove either or both of those issues, the materiality of the issues would also have been indisputable.

## C. *Its Competence:*

That the out-of-court assertion under discussion was neither offered nor received to show the truth of the thing asserted does not foreclose our consideration of the hearsay question. Had the evidence been admissible as hearsay, we would affirm the trial judge's ruling on admissibility even though he relied upon a different evidentiary theory. A ruling generally will be affirmed even when the ruling is right for the wrong reason.

If it had been offered to show the truth of the thing asserted, however, this out-of-court assertion would have foundered on the shoals of the competence (trustworthiness) requirement. It would have been, by definition, hearsay. A traditional definition of hearsay typically begins, "An out-of-court assertion, written or oral, offered in court to prove the truth of the thing asserted ...," and then goes on to state the critical criterion for admissibility, "... *and thus depending for its value upon the credibility of the out-of-court asserter (or declarant)*."

In this case, the out-of-court asserter or declarant was Al. There was no way of testing or determining Al's credibility. Al was neither under oath nor subject to cross-examination. There were not shown to have been, moreover, any of the firmly rooted alternative guarantees of Al's trustworthiness that would qualify his out-of-court assertion as one of the traditional exceptions to the rule against hearsay.

Neither Al's recording of the license number nor his report to the investigative officer who responded to the scene a few minutes later appear to have been excited utterances made while in the throes of overwhelming emotion. *McLain* § 803(2).1, at 349–352; *Cassidy v. State*, 74 Md.App. 1, 16–23, 536 A.2d 666, 673–677 (1988). Neither do they appear to have had sufficient spontaneity to qualify as present-sense impressions. *McLain* § 803(1).1, at 343–346; *Booth v. State*, 306 Md. 313, 508 A.2d 976 (1986); *Houston Oxygen Co. v. Davis*, 139 Tex. 1, 161 S.W.2d 474 (1942). Although caught, to be sure, in the middle of a combat

situation, Al appears to have responded with admirable coolness and deliberation first in observing and then in memorializing a vital clue.

The fact that Al promptly recorded the license number on a piece of paper would not qualify the piece of paper and its contents for status as an instance of "past recollection recorded," yet another hearsay exception possibility. If it were the law (it is not) that the piece of paper could come in without a testimonial sponsor to vouch for it, the piece of paper uninterpreted by a sponsoring witness would be, as we have already discussed in another context, devoid of meaning. The memorandum itself consisted simply of six unexplained letters and numbers. The significance of those disembodied letters and numbers depended upon some explanation extrinsic to the four corners of the memorandum itself. This particular memorandum could not speak for itself even if the law did not require a testimonial sponsor. It is clear, however, that the law does require a testimonial sponsor.

The admissibility of a memorandum of past recollection recorded contemplates that it will be offered through a witness who either made the memorandum or was present at its making and can vouch for its authenticity. *McLain* § 803(5).1, at 371–372, describes the necessary foundation that must be laid for the reception of this variety of hearsay:

"Maryland recognizes the common law hearsay exception for past recollection recorded. Proof of a writing will be allowed under this exception if the following foundation is laid:

(1) *The witness* had first-hand knowledge of the matters recorded in the writing;

(2) *The witness' present recollection is impaired* and cannot be fully refreshed, so that the writing will provide more accurate information than the witness' testimony to present recollection;

(3) The writing was made or adopted *by the witness* at or near the time of the event recorded;

(4) At that time, *the witness* or another *recorded the facts* correctly or the witness recognized as correct the facts recorded." (Footnotes omitted) (Emphasis supplied).

*See also Baker v. State,* 35 Md.App. 593, 597–598, 371 A.2d 699, 702 (1977).

For the piece of paper containing the license tag number to have been admissible as a memorandum of past recollection recorded, it would have been necessary for Al to appear as a witness and to testify 1) that it was he who wrote down the license number, 2) that he cannot now remember the license number, 3) that he wrote the license number down immediately after observing it, and 4) that he wrote the license number down accurately and recognized at the time that his notation was accurate. As a non-witness, of course, Al could not and did not testify to any of this necessary foundation.

In summation, the out-of-court assertion could not have qualified as admissible hearsay to prove the truth of the thing asserted upon the merits of guilt or innocence.

### *For the Fact That It Was Heard and Read*

In this case, however, the out-of-court assertion was offered and received for the very different purpose of showing that Officer Robert Martin had probable cause to arrest the appellant. For such a purpose, the out-of-court assertion was non-hearsay. Even in that capacity, its admissibility still depended upon 1) its competence, 2) its relevance, *and* 3) its materiality.

### A. *Its Competence:*

The out-of-court assertion that was incompetent when offered for the truth of the thing asserted became competent when offered simply for the fact that it was heard and read. As non-hearsay, the assertion no longer depended for its value upon the credibility of the out-of-court asserter.

The failure to establish Al's credibility had been fatal to the former use; Al's credibility did not matter to the latter use.

The reason for the shift in our concern is clear. On the merits of guilt or innocence, what matters is what really happened at the Ferndale Texaco station. It is vitally important, therefore, that the assertion about what happened be true. On the limited subject of probable cause, on the other hand, we do not care what really happened at the Ferndale Texaco station. It does not matter, therefore, whether the assertion be true or false. Our single concern, on that limited issue, is with the Fourth Amendment reasonableness of the behavior of the arresting officer. All that matters in that regard is that the arresting officer (or some other member of his police team) heard and read the assertion and believed it to be true.

The only credibility that mattered, therefore, was that of Officer Matteo, who heard and read Al's assertions and passed them on to Officer Martin. Officer Matteo took the stand and was under oath. Officer Matteo's manner and demeanor in testifying were observable by judge and jury alike. Officer Matteo was subject to cross-examination. Officer Matteo's credibility was thus assured and his testimony as to what he heard Al say and as to what he read that Al wrote was, therefore, preeminently competent.

B. *Its Relevance:*

On the subject of probable cause for the appellant's arrest, the relevance of Al's out-of-court assertion is self-evident. It is a monumental understatement to observe that the fact that the appellant's car, carrying the robber, was seen speeding away from the robbery scene 30 minutes earlier makes it more likely that the appellant, found behind the wheel of the same car 30 minutes later, was the robber than would have been the case if the appellant's car had not been seen speeding away from the robbery scene. The out-of-court assertion was, therefore, probative or relevant on the issue of probable cause for the appellant's arrest.

### C. *Its Materiality:*

In this case and for this purpose, however, Al's out-of-court assertion founders upon the shoals of the materiality requirement. The issue of probable cause was not a material issue at this trial.

It is clear that the Fourth Amendment reasonableness of an arrest and of a search incident to that arrest that produced incriminating evidence is not automatically an issue in a criminal trial. Maryland Rule 4–252(a)(3) and (b) points out, for example, that a suppression motion is one that, subject to an exception not here pertinent, must be filed in advance of trial. In *Kohr v. State*, 40 Md.App. 92, 94–102, 388 A.2d 1242, 1244–1248 (1978), Judge Liss made it very clear that the failure to raise the suppression issue timely operates as a waiver of that issue. In *Pulley v. State*, 43 Md.App. 89, 96, 403 A.2d 1272, 1276 (1979), we observed, "Even with respect to the most basic of constitutional rights, the Supreme Court has not been averse to declaring these rights forfeit when the procedural requirements for raising them have not been satisfied."

In the present case, the appellant was totally foreclosed from raising during the course of the trial any issue with respect to Fourth Amendment suppression not by such an act of mere omission but by an affirmative act of commission. At the outset of the trial and before it had been ruled upon, the appellant explicitly withdrew the earlier suppression motion that he had filed. When the out-of-court assertion (the folder noting the license number and the testimony with respect thereto) was offered on the issue of probable cause, probable cause was not an issue in the case and could not possibly have later become an issue in the case.

With respect to the inadmissibility of evidence, even competent and relevant evidence, offered to prove an immaterial issue, Judge Bloom observed for this Court, in *Paige v. Manuzak*, 57 Md.App. 621, 632, 471 A.2d 758, 763–764 (1984):

"For an item of evidence to be admissible, it must be both relevant and material. . . .

Here, the question asked of Mr. Paige, if relevant (as suggested by *Sard v. Hardy* [281 Md. 432, 379 A.2d 1014 (1977)]), was 'relevant' to an immaterial proposition. That is, it tended to prove a proposition that had no legal significance to the litigation. . . . The question, therefore, was properly excluded." (Citation omitted).

In this case, probable cause was not an issue before either the judge or the jury. Even if it had been an issue for the judge, however, in no way could it have been a material issue for the jury. An improper arrest, search or seizure might lead, if timely requested, to the exclusion of evidence, but that is something that would be done by the judge out of the presence of the jury. The jury should never even know that the evidence existed. The decision to apply the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is a function that is for the judge alone and is totally foreign to the jury's mission. As we took some pains to point out in *Ehrlich v. State*, 42 Md.App. 730, 738–739, 403 A.2d 371, 377 (1979):

"The role of excluding probative evidence in order to serve the extrinsic, prophylactic purpose of making the police behave is a role exclusively for the court. It has nothing whatsoever to do with the jury function. The jury is assigned the sole mission of determining 'Whodunnit?' Evidence that is competent, material and relevant and which helps the jury determine the answer to that ultimate riddle comes in. Evidence which is incompetent, immaterial and irrelevant and does not assist in answering the riddle stays out. Physical evidence—guns, bloodstains, fingerprints, contraband—is just as helpful to the jury in determining 'Whodunnit?' whether the police have scrupulously obeyed the Bill of Rights or have shamelessly trampled it underfoot. The latter concern is a very real one to society at large and to the courts in administering the exclusionary rule, but it is simply not the concern of a criminal jury."

The weight that the jury might give to the gun and the cash recovered from the appellant following his arrest would in no way be affected by the propriety or impropriety of the appellant's arrest. Reasonableness according to the Fourth Amendment has no correlation with the merits of criminal guilt or innocence. As we noted, in *Ehrlich v. State, supra,* at 42 Md.App. 739, 403 A.2d 371:

"In the case at bar, all that matters to the jury is that marijuana was found in the trunk of the appellant's automobile. The existence of probable cause, which the appellant wished to argue to the jury, is immaterial to the only issue before the jury: 'Did the appellant possess contraband marijuana?' Whether the police entered the trunk of the automobile with probable cause or upon the most cavalier of fishing expeditions is immaterial to the issue of criminal possession. . . .

The jury has all that it can handle in determining guilt or innocence. It is not the function of the jury 'to police the police' by denying itself probative evidence." (Citations omitted).

Our conclusion in *Ehrlich v. State, supra,* at 42 Md.App. 738, 403 A.2d 371, is our conclusion here:

"Evidence will never be permitted to go to the jury on an immaterial issue. Argument and instructions will never be offered to the jury on an immaterial issue. The jury will never be asked to consider and to decide an immaterial issue."

To have admitted the out-of-court assertion in this case for any purpose was error. We are not persuaded beyond a reasonable doubt that the error was harmless.

JUDGMENT REVERSED; COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.