76 A.3d 442

**Ronald SINCLAIR**

v.

**STATE of Maryland.**

**No. 1724, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 25, 2013.

Amy E. Brennan (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, GRAEFF, JAMES A. KENNEY, III (Ret'd, Specially Assigned), JJ.

JAMES A. KENNEY, III (Ret'd, Specially Assigned), J.

A jury in the Circuit Court for Prince George's County convicted Ronald Sinclair, appellant, of charges related to carjacking, use of a handgun in the commission of a felony or crime of violence, and possession of cocaine. He was sentenced to a twenty-year term for carjacking, a concurrent twenty-year term for conspiracy to commit armed carjacking, a concurrent four-year term for possession of cocaine, a concurrent five-year term for possession of a regulated firearm by a prohibited person, and a consecutive twenty-year term for use of a handgun in a felony or crime of violence. The remaining convictions merged for sentencing purposes.

Appellant presents three questions, which we have consolidated into two, reordered, and rephrased as follows: [1]

1. Did the trial court err in ruling that [appellant's] cell phone could be searched without a warrant incident to his valid arrest?

2. Did the trial court err in admitting other crimes evidence, and, if not, did the trial court then abuse its discretion in determining that appellant's statement to his probation officer was proper rebuttal evidence?

For reasons that follow, we answer "no" to both questions, and, accordingly, affirm the judgments of the circuit court.

## FACTUAL and PROCEDURAL BACKGROUND

### Motion *in Limine*

Immediately before the jury was selected and trial began, appellant, through defense counsel, moved *in limine* to suppress photographs of car rims found on appellant's cell phone, which was seized at the time of his arrest. During argument

---

**1.** Appellant presented the following three questions:
 1. Did the trial court err in ruling that [appellant's] cell phone could be searched without a warrant incident to his valid arrest?
 2. Did the trial court err in admitting other crimes evidence?
 3. Did the trial court abuse its discretion in determining that [appellant's] statement to his probation agent was proper rebuttal evidence?

on the motion, defense counsel stated that at some point after appellant was arrested, "[t]he law enforcement officer opens the cell phone, goes through it, and apparently pulls out what purports to be some photographs." This search, according to defense counsel, violated appellant's Fourth Amendment "right against unreasonable searches and seizures."

Defense counsel further argued: "I know there's been some case law about if the phone is just opened, for example, similar to a digital phonebook, that might be permissible, Your Honor, but here the State did more in the absence of a warrant. And in the absence of exigent circumstances." Defense counsel also argued that the images recovered from appellant's phone constituted impermissible hearsay:

> [DEFENSE COUNSEL]: Your Honor, if it's just the images, but there's other information in there to it, which is clearly hearsay. There's a time stamp on it, it says sent. We don't know who the other party is. If [it's] just an image without more, Your Honor, then, you know, I think that's workable, but any testimony beyond that I think has to come through an expert and the State has not noted one.

The court concluded that a witness was not required to authenticate the images on appellant's phone and denied appellant's motion, finding that it was "a valid search incident to arrest."

Appellant also moved to suppress the introduction of a recorded phone call that he made from jail to his probation agent following his arrest for carjacking.[2] In this recorded conversation, appellant informed his probation agent that he was with his mother and girlfriend on the day of the carjacking. During argument on the second motion, the following exchange occurred:

> [DEFENSE COUNSEL]: The second motion *in limine,* Your Honor, is that the State has put the defendant on notice that they want to use certain phone calls from the

---

2. The transcripts of the recorded phone call were not included in the record before us.

detention center. And particularly a phone call between the defendant and he calls his probation agent to say, you know, I'm here. **I'm always straight with you, I'm at the earliest stages of the case, but don't worry, I didn't have anything to do with this. It gives a little more explanation and says something like I was with my mom and my girlfriend that day or something to that effect.** And she [the probation officer] says that's fine. Just keep me updated.

The State has said that they want to use that recording by and through the probation agent, Your Honor. I'd object for a couple of reasons. One, it's hearsay. Two, it's [sic] prejudicial value, exceeds its probative value. Third, I don't think the State can use it in [its case-in-chief], Your Honor, unless and until an alibi is generated, and then only if the defendant were to take the witness stand, it could be used potentially as impeachment.

THE COURT: Or if he presents another witness.

What is the State's position?

[THE STATE]: That is the State's position. It was not our intention to use it in our case-in-chief. The Defense have given a [notice] of alibi witnesses of which I have a motion *in limine*. That is the reason we be would using it is to rebut [an] alibi witness. Whether it be the defendant or somebody else.

THE COURT: Correct.

[DEFENSE COUNSEL]: Your Honor, that's pretty significant for a couple of reasons. One [it's] hearsay. [It's] not under oath.

THE COURT: It's the statement of the defendant.

[DEFENSE COUNSEL]: Yes, but it still—it has to be for some [other] exception to the hearsay rule, Your Honor. Admission against interest. Consciousness of guilt. Any of those, Your Honor, but this is him calling his probation agent.

THE COURT: Once again I don't know anything about this case. They came up to me yesterday afternoon, but pre-

sumably if you call a witness who is not his mother or his sister [sic] and he says he was with me at the time, that is appropriate rebuttal.

[DEFENSE COUNSEL]: Your Honor, I think at some stage we should probably hear the recording. It's four minutes and I don't think it specifies a time. It's not under oath, I mean, it's something that I think is unfairly prejudicial to the defendant because it was not said under oath and it was maybe a two minute [conversation] where he's not specifically saying this is my alibi or even the time in question, Your Honor. The concern that is it's going to prejudice the jury.

THE COURT: Mr. [Defense Counsel], we can deal with that if you do call your alibi witness and that comes up, but the fact it's not under oath is not significant. **The fact that he didn't say, quote unquote, this is my alibi is not significant. If it impeaches a witness, it is perfectly appropriate.** So let's pick our jury and we'll leave that and see if that occurs.

**But if you do call a witness who testifies otherwise, it's admissible, and I will certainly find that the probative value far outweighs any prejudicial value.**

[DEFENSE COUNSEL]: Your Honor, why don't we address that as we get closer. I think I want the court to hear it before the witness.

(Emphasis added.)

### The Trial

Thomas Gaines testified that at approximately 9:00 p.m. on April 29, 2010, he stopped at the CITGO gas station located at 5175 Old Branch Avenue in Temple Hills to get gas for his Dodge Charger. While pumping gas into his car, he observed two men engaged in a heated phone conversation: one was appellant, who "had some plaits or something in his hair at the time." After the call ended, appellant and the second man approached Gaines. Appellant asked Gaines if he "wanted to buy some weed." Gaines rejected the offer.

Appellant then "put a gun" in Gaines's side, and told him not to move. Gaines described the gun as being black; "[i]t looked like a 9mm, like the kind of gun the police have." The second man went into Gaines's pockets and took his wallet and cell phone. Gaines testified that he had two or three dollars in his wallet. After his wallet was taken, appellant and the second man fled the scene in Gaines's car. Gaines identified appellant as the person who brandished the handgun and drove the car away.

Gamadanyau Salami, the cashier at the CITGO gas station where the carjacking occurred, corroborated Gaines's testimony. Salami testified that while Gaines was pumping gas into a Dodge Charger, he was approached by two men, one of whom had dread locks. Immediately after approaching Gaines, one of the two brandished a gun. After taking Gaines's wallet, they sped away from the gas station in the Dodge Charger.

The following day, Gaines went to a shopping center in Marlow Heights to purchase a new phone and saw his car in the parking lot. Gaines instructed his girlfriend to flag down the police officer that was also in the parking lot while he "blocked in" his vehicle, so that it could not be driven out of the parking lot. He then "went looking for the guys that stole it." At approximately the same time that the officer contacted by Gaines's girlfriend arrived to help, Gaines saw appellant in a barber shop in the shopping complex. According to Gaines, appellant kept looking back at him.

Appellant exited the barber shop, talking on his cell phone. A car soon pulled up, appellant got in, and the car drove away. The police stopped that car before it exited the shopping center and ordered appellant out of the car.

Officer Kevin Stevenson, Prince George's County Police Department, testified that he responded to the call for assistance regarding the carjacking at the CITGO station. At the station, Gaines provided Officer Stevenson with a physical description of appellant. Officer Stevenson put out a lookout for the stolen Dodge Charger.

When Gaines discovered his car the next day, Officer Stevenson came to the shopping center where the Dodge Charger was parked and confirmed that the vehicle belonged to Gaines. After calling a towing company to pick up the car, he, along with Gaines, watched appellant, who, at the time, was still sitting in the barber shop. When appellant was in the barber shop, Gaines identified appellant as the perpetrator of the carjacking. According to Officer Stevenson, Gaines "was pretty adamant that [appellant] was the guy who carjacked him."

Officer Stevenson testified that appellant entered a car driven by another person and containing an additional passenger. He stopped the car almost immediately thereafter and ordered the passengers to get out of the car and sit on a curb. When the occupants of the car were sitting on the curb, Officer Stevenson observed "some marijuana bags lying on the floor in the back seat on the floorboard." When asked "who had been seated" where the marijuana was located, Officer Stevenson replied that it was "where the defendant was sitting." After Officer Stevenson "patted everybody for weapons," Gaines "walked up and pointed out the defendant, once again, and said that's the guy who carjacked me." Appellant was arrested, and a cell phone as well as a substance that was later determined to be cocaine were seized from his person.[3]

Approximately five minutes after arresting appellant, Officer Stevenson examined the cell phone found on appellant's person. Officer Stevenson testified that the screen saver of the recovered cell phone was a photograph of automobile rims that were confirmed to be identical to the rims on the stolen Dodge Charger. He also located two other pictures of rims that were confirmed to be identical to the rims on the stolen Dodge Charger in the photo library of appellant's cell phone.

In his arrest report, Officer Stevenson wrote that appellant had "dreads to his shoulders" and "looks like the person who carjacked [Gaines]." The report also noted that appellant was

---

3. During argument on the motion, defense counsel conceded that the seized cell phone belonged to appellant.

"standing near [Gaines's] vehicle." On re-direct, Officer Stevenson was asked if there was any evidence that appellant had a haircut while sitting in the barber shop. Officer Stevenson replied: "It didn't appear [appellant] ha[d] a haircut."

Appellant did not take the stand, but he presented alibi evidence through his father, Ronald Sinclair, Sr. and Jason Slaughter. Mr. Sinclair testified that he let appellant, who did not have a driver's license, borrow a family car on the date of the carjacking and go out with a family friend, Jason Slaughter, in Largo. According to Sinclair, appellant and Slaughter asked to borrow the car "[a]round 8ish, 7:30—between 7:30 and 8" in the evening. Sinclair was certain that he let appellant borrow (and Slaughter drive) the car on the night the carjacking occurred. He was confident that he correctly remembered this because his day planner for April 29, 2010 had a "notation" that appellant and Slaughter borrowed a car. He did not bring the day planner to trial because it had been misplaced.

Slaughter testified that he was with appellant on the night of the carjacking. According to Slaughter, they were at the Largo Town Center between approximately 8:00 p.m. and 10:00 p.m., and eventually went to the Stonefish Grill, where he used to work, for approximately 90 minutes. Slaughter testified that he was able to remember the events so well because on April 30, 2010, the day after the carjacking occurred, he was told to leave his home. On cross-examination, Slaughter acknowledged that he had not shared this information with the police prior to trial.

After Slaughter testified, the State called appellant's probation agent to the stand, and during her testimony, the State presented as rebuttal evidence the recorded phone call that appellant made from jail to her. On cross-examination, there was the following exchange:

[DEFENSE COUNSEL]: And when you spoke with [appellant], was there any conversation specifically about what—where he was and what times?

PROBATION AGENT: I remember [appellant] mentioning that he was somewhere else. I do recall that.

[DEFENSE COUNSEL]: And do you recall whether there were time things on the phone call?

PROBATION AGENT: No.

Additional facts will be added as necessary in our discussion of the issues.

## DISCUSSION

### I. Cell Phone Search

Appellant contends that the police were required to obtain a warrant prior to searching the recovered cell phone. Therefore the "court erred by admitting the photographs of the wheel rims stored on the cell phone." In support of his argument, appellant cites *State v. Smith*, 124 Ohio St.3d 163, 920 N.E.2d 949 (2009), in which the Ohio Supreme Court held that "the warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances." *Smith*, 920 N.E.2d 949 at 955–966.

The State counters that Md. Rule 4–252 "requires that certain issues in a criminal case, including, as here, an allegation of an unlawful search, be raised by written motion filed within 30 days after the appearance of counsel in the case." Because appellant did not comply with this Rule, the State contends that he has automatically waived this argument. If the issue is preserved for our review, it is the State's view that defense counsel conceded that Officer Stevenson's initial opening of the cell phone was constitutional, and, therefore, did not object to its introduction. In other words, appellant's motion *in limine* as to the cell phone was "intentionally limited to the claim that it was only Officer Stevenson's conduct in doing 'more in the absence of a warrant,' namely, the examination of the phone's photo library[.]" Moreover, "[b]ecause the concededly admissible screen-saver photograph duplicates the

essential content of the other photographs from the phone photo library," it follows that, "there could be no prejudice from the admission of the other photographs" found on the phone.

As to the merits of appellant's contention, the State argues that a majority of jurisdictions confronting the issue have concluded " 'that a search of the contents of a defendant's cellular telephone or other personal electronic device is a lawful search incident to arrest.' " (quoting *People v. Taylor*, 296 P.3d 317, 323 (2012)). According to the State,

> [t]hese cases generally emphasize the well-established ability of the police to search, in particular, the person of the arrestee, as opposed to the immediate area around the arrestee, and that a cellular phone is simply a digital method of transporting information that otherwise would have to be carried in physical form, no doubt in some form of a container.

As we explain below, we are persuaded that appellant's claim is adequately preserved for our review, but that it fails on the merits.[4]

## A. Preservation

■■ The Court of Appeals has repeatedly held that "the Maryland Rules are precise rubrics." *Pinkney v. State*, 427 Md. 77, 87, 46 A.3d 413 (2012); *Dove v. State*, 415 Md. 727, 739, 4 A.3d 976 (2010); *Williams v. State*, 364 Md. 160, 171, 771 A.2d 1082 (2001). Maryland Rules, therefore, "are to be read *and followed.*" *Pinkney*, 427 Md. at 87, 46 A.3d 413 (quoting *Parren v. State*, 309 Md. 260, 280, 523 A.2d 597 (1987)) (emphasis added). Additionally, the "interpretation of the Maryland Rules is a question of law; as such, [an appellate court's] review [of] a trial court's determinations on

---

4. We disagree with the State's contention that defense counsel actually conceded that Officer Stevenson's initial opening of appellant's cell phone was a permissible search. Therefore, we need not address whether the introduction of the additional photographs on the cell phone was cumulative.

matters of interpretation [is] without deference." *Id.* at 88, 46 A.3d 413.

 Md. Rule 4–252(b) provides that a motion to suppress "shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court[.]" According to Md. Rule 4–252(e): "[a] motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought." We have said "[f]ailure to make a mandatory motion within the prescribed time limits, *absent good cause to forgive the dereliction,* bars all claims, even those full of constitutional merit." *Pugh v. State,* 103 Md.App. 624, 656–57, 654 A.2d 888 (emphasis added), *cert. denied,* 339 Md. 355, 663 A.2d 73 (1995). In *Pugh,* we pointed out that in finding good cause the trial court is vested "with wide discretion.... Thus the trial judge's determination is entitled to the utmost respect and should not be overturned unless there was a clear abuse of that discretion." *Id.* at 656, 654 A.2d 888 (internal quotations and citations omitted) (ellipses in *Pugh* ).

Here, appellant was arraigned on July 30, 2010 and on August 5, 2010, an attorney, from the Office of the Public Defender, filed an entry of appearance along with an omnibus motion that requested suppression of any evidence obtained in violation of appellant's 4th, 5th, 6th, and 14th Amendment rights. On September 2, 2010, the State responded that appellant's motion did not comport with Maryland Rule 4–252(e) and did not put the State on notice of the suppression issues that he actually wished to raise. The State filed discovery on September 7, 2010, and set forth that it would use relevant material on appellant's cell phone and the testimony of Officer Stevenson.

Appellant's motions were withdrawn without prejudice on September 24, 2010. The next hearing dates were rescheduled after the State had discovered new evidence but subsequently failed to provide timely discovery. On January 26, 2011, the court reset the motions hearing because appellant

had retained a private attorney, who was not prepared to proceed. On March 2, 2011, the court granted the State's request for a continuance because a new State attorney was assigned to the case. From the record, it appears that on March 11, 2011, motions were again withdrawn without prejudice. The record is unclear, however, as to the subject of those motions and who withdrew them. On March 17, 2011, appellant's request for a continuance was granted because the State had failed to provide timely discovery. Before trial on April 19, 2011, the appellant made a motion in limine to suppress the evidence recovered from the cell phone. The State's attorney argued that he had not come prepared to address the motion because they had "already litigated motions, time [had] passed and so on and so forth so [he] had no notice that [the issue would be] raised." There was no reference to Md. Rule 4–252. The trial court then addressed the issue on the merits.

We have held that omnibus motions, such as the motion filed in this matter, are permitted under Md. Rule 4–252. *See Sellman v. State,* 152 Md.App. 1, 13–14, 828 A.2d 803 (2003). Here, appellant, through counsel, timely filed the omnibus motion within 30 days of his arraignment in accordance with Md. Rule 4–252(b). While appellant's first counsel withdrew the motion to suppress, it was withdrawn without prejudice, which ordinarily would not preclude a future motion. Appellant's second counsel then raised the issue before trial in a motion in limine.[5] The issue we must decide is whether withdrawal of the omnibus motion negated appellant's compliance with subsection (b). Under the circumstances presented by the record, we are not persuaded that it does. The trial court allowed the motion to be withdrawn without prejudice,

---

**5.** In *Carroll v. State,* we held that withdrawing a motion is an affirmative act of commission and constitutes a waiver rather than a forfeiture. *Carroll v. State,* 202 Md.App. 487, 514, 32 A.3d 1090 (2011) (citing *Green v. State,* 81 Md.App. 747, 759, 569 A.2d 741 (1990)). This case, however, is distinguishable from *Carroll,* in which the appellant withdrew his motion to suppress at trial and then did not raise the issue again until the appeal. Here the issue was raised before trial.

which on its face, preserved appellant's right to raise the issues again. To hold that appellant's motion to withdraw negated his initial compliance with subsection (b), we would effectively be converting the withdrawal without prejudice into a withdrawal with prejudice. We decline to do so.

We recognize that the State challenged the sufficiency of the omnibus motion. The Court of Appeals held in *Denicolis v. State*, 378 Md. 646, 660, 837 A.2d 944 (2003) that sometimes courts will overlook the generality of omnibus motions and permit defendants to make their complaint more specific at a hearing on the motion. On appeal, the trial court's discretion to allow a defendant to support an unsupported motion has not been disturbed, so long as "the State is not unduly prejudiced by being called upon to respond immediately to allegations of which it had no notice." *Id.* From the record, it appears that the appellant did not provide a factual or legal basis for the motion to suppress until the hearing before trial on April 19, 2011. The trial court, however, allowed the appellant to proceed with his argument which provided a factual or legal basis for the motion. We will not disturb the trial court's decision because the State was not unduly prejudiced. Even though the State's Attorney commented that he was not prepared, he was able to argue the motion and the court ruled in favor of the State.

Additionally, we have said that when the State fails to raise the argument at trial that appellant did not comply with the requirements of Md. Rule 4–252, the issue is not preserved for our review. *State v. Brown*, 200 Md.App. 47, 50, 24 A.3d 195 (2011). Here, the State's Attorney commented that he was not prepared to argue the suppression issue because motions had already been litigated and "time has been passed [sic]." It is not clear from the statement that the State was objecting on the grounds that the appellant had failed to comply with the requirements of Md. Rule 4–252.

The trial court proceeded to hear the motion on the merits. The trial court, therefore, must have found either that the appellant had not waived his right to raise the issue or, if it

understood that the State was objecting on a failure to comply with the time requirements of Md. Rule 4–252, that there was good cause to hear the motion. Although the court did not articulate its reasoning for considering and ruling on the motion, silence on the issue does not imply an abuse of discretion. *See Wagner v. Wagner*, 109 Md.App. 1, 50, 674 A.2d 1 ("[W]e presume judges to know the law and apply it, even in the absence of a verbal indication of having considered it."), *cert. denied*, 343 Md. 334, 681 A.2d 69 (1996); *accord Brown v. State*, 171 Md.App. 489, 509, 910 A.2d 571 (2006). For these reasons, we are persuaded that the issue is preserved for our review.

## B. Warrantless Cell Phone Search

■■ Warrantless searches are said to be *"per se* unreasonable." *Williamson v. State*, 413 Md. 521, 556, 993 A.2d 626, *cert. denied, Williamson v. Maryland,* —— U.S. ——, 131 S.Ct. 419, 178 L.Ed.2d 327 (2010); *accord City of Ontario, Cal., v. Quon*, 560 U.S. 746, 130 S.Ct. 2619, 2630, 177 L.Ed.2d 216 (2010); *Paulino v. State*, 399 Md. 341, 349, 924 A.2d 308, *cert. denied, Maryland v. Paulino*, 552 U.S. 1071, 128 S.Ct. 709, 169 L.Ed.2d 571 (2007). *See also Groh v. Ramirez*, 540 U.S. 551, 572–73, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Thomas, J., dissenting) ("[O]ur cases stand for the illuminating proposition that warrantless searches are *per se* unreasonable, except, of course, when they are not."). In other words, warrantless searches are not unreasonable when they are permitted by an exception recognized by the Supreme Court.

■ "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); *accord Briscoe v. State*, 422 Md. 384, 396, 30 A.3d 870 (2011). This exception has the dual purpose of preserving evidence and ensuring officer safety. *Gant*, 556 U.S. at 332, 129 S.Ct. 1710. *See also Bailey v. State*, 412 Md. 349, 373 n. 10, 987 A.2d 72 (2010) ("The rationales for a search incident to a custodial arrest are: (1) to check the arrestee for weapons that might be used to harm the officers or escape, and (2) to recover

evidence that might be destroyed by the arrestee.") (citing *Belote v. State*, 411 Md. 104, 113, 981 A.2d 1247 (2009)).

In *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court explained that the area of a search incident to arrest is limited in scope. Officers are only permitted to search the area within an arrestee's "immediate control," which is defined as being "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034. In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court further explicated the search incident to arrest exception,

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.*

*Robinson*, 414 U.S. at 235, 94 S.Ct. 467 (emphasis added).

The exception has included the search of wallets,[6] address books,[7] purses,[8] brief cases,[9] and containers. *See United States v. Finley*, 477 F.3d 250, 260 (5th Cir.2007) ("The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person."). Because of their widespread popularity, it is, perhaps not sur-

---

6. *United States v. Uricoechea–Casallas*, 946 F.2d 162, 166 (1st Cir.1991).

7. *United States v. Rodriguez*, 995 F.2d 776, 777–78 (7th Cir.), *cert. denied*, 510 U.S. 1029, 114 S.Ct. 648, 126 L.Ed.2d 605 (1993).

8. *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir.), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

9. *United States v. Eatherton*, 519 F.2d 603, 610–11 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975).

prising, that courts are being asked to consider whether the search incident to arrest exception applies to a warrantless search of an arrestee's cell phone.[10] A majority of courts that have addressed the issue have upheld warrantless search of an arrestee's phone under the search incident to arrest exception. *See United States v. Wurie*, 728 F.3d 1, 5 (1st Cir.2013) (noting that "a majority" of courts "have ultimately upheld warrantless cell phone data searches"); *Commonwealth v. Phifer*, 463 Mass. 790, 794 n. 5, 979 N.E.2d 210 (Mass.2012) ("A majority of the appellate decisions in other States as well as decisions of various Federal courts appear to conclude that cellular telephones do not possess special characteristics that remove them from the general framework enunciated by the Supreme Court in the [*United States v.*] *Edwards*, [415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) ] *Robinson*, and *Chimel* line of cases[.]").[11]

Courts that have rejected a warrantless search of a cell phone "have employed a variety of rationales" for doing so. Adam M. Gershowitz, *Password Protected? Can a Password*

---

**10.** We note that several federal circuit courts have examined the issue, concluding that a warrantless search of a cell phone is permitted under the search incident to arrest exception. *See generally United States v. Flores–Lopez*, 670 F.3d 803 (7th Cir.2012) ("Looking in a cell phone for just the cell phone's phone number does not exceed what decisions like *Robinson* and [*United States v. Concepcion*, 942 F.2d 1170 (1991) ] allow."); *United States v. Curtis*, 635 F.3d 704, 712–14 (5th Cir.2011) (holding that the search incident to arrest exception "authorizes a police officer to search the electronic contents of a cell phone recovered from the area within an arrestee's immediate control").

**11.** *See also Hawkins v. State*, 307 Ga.App. 253, 257, 704 S.E.2d 886 (2010) ("Although it is a matter of first impression for our Court, many other courts have addressed this issue. Most have concluded that, when a search for electronic data that might reasonably be stored in a cell phone is authorized, the cell phone is roughly analogous to an electronic 'container' that properly can be 'opened' and searched for the data, much as a traditional 'container' can be opened to search for tangible objects within."), *aff'd*, 290 Ga. 785, 723 S.E.2d 924 (2012); Adam M. Gershowitz, *Password Protected? Can a Password Save Your Cell Phone from a Search Incident to Arrest?*, 96 Iowa L.Rev. 1125, 1137 (2011) ("[C]ourts have decided the bulk of warrantless cell-phone search cases under the search-incident-to-arrest doctrine, and they have upheld the searches in the vast majority of cases.").

*Save Your Cell Phone from a Search Incident to Arrest?*, 96 Iowa L.Rev. 1125, 1139 (2011). *See United States v. Wurie,* 728 F.3d at 5 ("A smaller number of courts have rejected warrantless cell phone searches, with similarly disparate reasoning."). *See also, Smallwood v. State,* 113 So.3d 724 (Fla. 2013) (The Florida Supreme Court held that the police cannot routinely search the data within an arrestee's cell phone without a warrant. The court read *Gant* as prohibiting a search once an arrestee's cell phone has been removed from his person on the theory that removal forecloses the ability to use the phone as a weapon or to destroy evidence contained therein.). The issue has yet to be addressed by the Supreme Court or Maryland's appellate courts.

We recognize at the outset that a cell phone, especially a so-called "smart phone," is, unlike some of the items referred to above, capable of storing substantial amounts of personal data. *See Smith,* 920 N.E.2d at 954. For instance, "[a] cell phone with just one gigabyte of memory can store over 64,000 pages of Microsoft Word text, or over 100,000 pages of e-mails, or over 675,000 pages of text files." Charles E. MacLean, *But, Your Honor, a Cell Phone is not a Cigarette Pack: An Immodest Call for a Return to the Chimel Justification for Cell Phone Memory Searches Incident to Lawful Arrest,* 6 Fed. Cts. L.Rev. 37, 42 (2012). *See also Flores–Lopez,* 670 F.3d at 805 (commenting that "a modern cell phone is a computer," and "a computer . . . is not just another purse or address book").

In addressing this issue, we find *United States v. Murphy,* 552 F.3d 405 (4th Cir.2009), to be instructive. In *Murphy,* the defendant was the front seat passenger in a car traveling northbound "at a high rate of speed" on Interstate 81 in Wythe County, Virginia.[12] *Id.* at 407. When the vehicle was stopped by a Virginia State Trooper, both the vehicle's driver and the defendant informed the trooper that they had left their respective driver's licenses at home; the third passenger

---

**12.** "Radar confirmed that the vehicle was traveling 95 miles per hour." *Id.*

provided a counterfeit out-of-state driver's license. Because the defendant provided the trooper with multiple names for himself, none of which could be confirmed, "he was arrested for obstruction of justice" and his cell phone was seized. *Id.* at 408.

Following the arrest of the two other occupants in the vehicle, officers "began an inventory search of the vehicle at the scene," which was subsequently completed at the local Sheriff's Department *Id.* While searching inside the vehicle's trunk, officers discovered a "laptop bag containing $14,790 in U.S. currency, which was packaged in stacks containing equal amounts of money, folded and arranged to offset one another, and then banded with rubber bands." *Id.* The defendant, admitting that the money was his, stated that "he was planning to use [it] to purchase shoes and clothing in New York for stores that he planned to operate in Alabama." *Id.* at 408–09. The defendant's seized cell phone, as well as other cell phones seized from the vehicle, was examined further at the Sheriff's Department, where it was logged as evidence because it "contained possible incriminating information." *Id.* at 409. At some point thereafter, the evidence, including the defendant's cell phone, was turned over to the Drug Enforcement Agency (DEA). *Id.* at 409. Nearly two months after the defendant was arrested, a DEA agent examined the contents of the defendant's cell phone, which contained text messages from an individual who later identified the defendant as his drug supplier. *Id.*

On appeal, the defendant challenged the constitutionality of the warrantless search of his cell phone. The United States Court of Appeals for the Fourth Circuit held: *"The need for the preservation of evidence justifies the retrieval of call records and text messages from a cell phone or pager without a warrant during a search incident to arrest." Murphy,* 552 F.3d at 411 (emphasis added). In explaining its holding, the court noted that officers are typically unable to determine "whether the text messages and other information stored on a cell phone will be preserved or be automatically deleted." *Id.* Due to the "volatile nature" of cell phone information and the

"manifest need ... to preserve evidence," it concluded that cell phones may be searched incident to arrest. *Id.*

Here, Officer Stevenson testified that, following appellant's arrest, he recovered the cell phone from a pocket in appellant's pants along with what proved to be cocaine. *See United States v. Quintana,* 594 F.Supp.2d 1291, 1300 (2009) ("Where a defendant is arrested for drug-related activity, police may be justified in searching the contents of a cell phone for evidence related to the crime of arrest, even if the presence of such evidence is improbable."). Officer Stevenson's nearly contemporaneous search with the arrest was certainly more timely and far less intrusive than the search in *Murphy,* as it was conducted within minutes at the arrest scene and he did not explore and read the call history or text messages stored on appellant's cell phone. He merely opened appellant's cell phone and immediately saw that the screen saver was a photograph of the rims matching the custom rims on Gaines's car.[13] That a person would display a "trophy" shot of the fruits of a crime as a screen saver may not be probable. But here, the screen saver and two photographs provided evidence directly related to the case which Officer Stevenson was investigating and therefore clearly needed to be preserved. We hold that the court did not err in ruling that the limited and immediate search of appellant's cell phone was a "valid search incident to arrest." [14]

---

13. *See United States v. Deans,* 549 F.Supp.2d 1085, 1094 (D.Minn.2008) ("[I]f a cellphone is lawfully seized, officers may also search any data electronically stored in the device."); *United States v. Santillan,* 571 F.Supp.2d 1093, 1104 ("In this case, the agents clearly had reason to believe that access to the defendant's cell phone was necessary to preserve safety and prevent the destruction of evidence. The search was limited in scope, as agents accessed only the recent contacts, or the incoming and outgoing calls. The search of the cell phone was therefore also permissible pursuant to the exigent circumstances exception."); *People v. Diaz,* 51 Cal.4th 84, 119 Cal.Rptr.3d 105, 244 P.3d 501, 506 (2011) ("Because the cell phone was immediately associated with defendant's person, [the arresting officer] was 'entitled to inspect' its contents without a warrant.") (quoting *Robinson,* 414 U.S. at 236, 94 S.Ct. 467).

14. Appellant's argument rests primarily on *Smith,* 920 N.E.2d 949 (2009). In *Smith,* the Supreme Court of Ohio held that "a cell phone is

## II. Rebuttal Evidence

■ After Slaughter testified, the State sought to discredit appellant's alibi evidence by introducing the recorded phone call in which appellant indicates to his probation agent that, because he was with his mother and girlfriend, he had an alibi for the charges against him. The following exchange then took place:

[THE STATE]: We have the audio. It's a call between the defendant and the defendant's mother. The defendant asked his mother to call his probation agent. She called his probation agent, [Ms. A.], she's here. She [the probation agent] will authenticate that she had a conversation with the defendant. I was just wondering if we need to cut out the probation agent and get to the meat of the phone call.

THE COURT: Well, ordinarily I will think so, but there's a stipulation in this case that the defendant has, in fact, been convicted of a disqualifying crime. So the jury knows he's got a prior conviction. There's no reason to go into [that] any further. In fact it might be to your advantage that they know he has a probation agent as opposed to— [15]

---

not a closed container for purposes of a Fourth Amendment analysis." *Id.* at 954. Under *Smith*, therefore, an officer could search incident to arrest an arrestee's person, clothing, wallet, and even a brief case, but not the arrestee's cell phone. *Smith*'s rationale is not persuasive because "before the innovations made available in current cell phone technology, the information contained within digital files would have been contained in tangible copies and carried in closed containers." *Gracie v. State*, 92 So.3d 806, 812 (Ala.Crim.App.2011) (quoting *Fawdry v. State*, 70 So.3d 626, 630 (Fla.Dist.Ct.App.2011)). Today, "[d]igital files and programs on cell phones have merely served as replacements for personal effects like address books, calendar books, photo albums, and file folders previously carried in a tangible form." *Id.* There is little question that if the photographs were found in a wallet at the time, they would not be suppressed.

15. On the second day of trial, both parties agreed to stipulate that appellant had been prohibited by law from possessing a regulated firearm. The State read the stipulation onto the record:

Ladies and gentlemen of the jury, the defendant and the State have both agreed, entered into the following what we call a stipulation of fact. "The Defendant admits that he is prohibited by law from

[DEFENSE COUNSEL]: Well, a disqualifying conviction doesn't necessarily mean he's still on probation.

THE COURT: No. It could mean that the person committed a murder and is in jail for 50 years as opposed to something else and being out on probation. I don't see any prejudice, in other words.

[DEFENSE COUNSEL]: Your Honor, our thought will be that the witness testifies from their recollection. Because I think the concern is that it's going to be—

THE COURT: What recollection? Mr. Bailiff.

I don't know. What he's asking is should we tell the witness not to say she's a probation agent? And what I'm saying is I don't see the prejudice in having her say that given the stipulation.

[DEFENSE COUNSEL]: And, Your Honor, our thought on the issue was; one, it's improper. We addressed this at the very beginning of the trial, Your Honor. Our position is that it's improper impeachment, because it doesn't speak to alibi per se. Alibi is defined as to the time of the crime. At least a little more generic in that sense.

Putting that aside for right now, Your Honor, the thought will be that it would be prejudicial to the defendant to hear them dial probation, and he gives his mom the number, and then they say the Department of Probation and that he talks to her that the testimony just be elicited from the witness that she spoke with him and he made this statement.

THE COURT: All right. Once again, Mr. [State], I'm going to, you know, leave it to you, but I'm not going to order that any part of that be redacted or that she not identify herself. There is consolidated with this case, well

---

possessing a regulated firearm due to a prior conviction for a disqualifying crime."

What that means is that the State does not have to prove that the defendant is prohibited by law from possessing a regulated firearm, since the defendant admits that he's prohibited and, therefore, when you deliberate you can consider that fact as already been proven. Thank you.

now it's down to one. Possession of a regulated firearm because of a prior conviction of a crime of violence. So as far as I can see, it was consolidated. No one ever asked for a separate trial. No one ever asked it be severed. It's part of this case.

So we have a jury here who knows that he has a prior conviction for a disqualifying crime. For the jury to know that he was on probation, I don't see any prejudice. I don't see any prejudice at all. In fact, like I said, I could—but I'm not going to. I don't see it. And I think if there is no prejudice, the probative value of knowing why the call was made far outweighs any prejudice. I mean, I think that's what we are talking about. The probative value of him, the context of the trial.

[DEFENSE COUNSEL]: Your Honor, I think that goes to one of the key issues is what's the purpose for the phone call. Not to assert an alibi defense. It's to make contact with his agent. And that's what I was going to suggest. If it's only a three minute conversation.

Appellant contends that the court "committed reversible error by admitting evidence that [he] was on probation for another crime" without performing the required legal analysis of whether it fell within an exception to the rule prohibiting evidence of other crimes. More specifically, he argues that "[t]he court never made the legal determination that the other crimes evidence was admissible to prove motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or the like." And, even if the recorded phone call with his probation agent did not in itself constitute evidence of other crimes or a prior bad act, appellant contends that it still should not have been admitted. He argues that "[w]ithout more detail" as to when he was with his mother and girlfriend, the statement "was not impeaching and was not proper rebuttal" evidence and thus its admission was an abuse of the court's discretion.

Maryland Rule 5–404(b) provides:

Evidence of other crimes, wrongs, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

The purpose of the Rule is to prevent jurors from developing a predisposition of guilt or prejudice toward the defendant based on evidence of other crimes or what we have called "bad acts." *State v. Faulkner*, 314 Md. 630, 633, 552 A.2d 896 (1989). Bad acts have been defined as an activity or conduct, not necessarily criminal, "that tend [ ] to impugn or reflect adversely upon one's character, taking into consideration the facts of the underlying lawsuit.' " *Gutierrez v. State*, 423 Md. 476, 489, 32 A.3d 2 (2011) (quoting *Klauenberg v. State*, 355 Md. 528, 547, 735 A.2d 1061 (1999)) (alterations in *Gutierrez* ). Evidence of prior bad acts is only admissible "if it is substantially relevant to some contested issue in the case and it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *Faulkner*, 314 Md. at 634, 552 A.2d 896.

Here, appellant correctly points out that the court did not expressly address whether the admission of this telephone call involved the introduction of prior bad act evidence. On the other hand, the record clearly indicates that both counsel and the court recognized the bad acts or other crimes issue in the discussion regarding redaction of some aspects of the telephone call. The court, in light of the stipulation that appellant was previously guilty of a disqualifying crime, expressly found that "the probative value of knowing why the call was made far outweighs any prejudice" resulting from the other crimes aspect of the evidence and clearly believed that the evidence reflected on the strength and credibility of the alibi testimony offered by appellant through his father and Slaughter. Moreover, during argument on both the motion *in limine* and at the trial, appellant directed his argument primarily to the unfair prejudice that would result in light of the statement's lack of relevance because it was not time specific. Thus, we

turn to whether the recorded phone call was substantially relevant to a contested issue in the case to be admitted as rebuttal evidence.

In *Hyman v. State*, 158 Md.App. 618, 857 A.2d 1166, *cert. denied*, 384 Md. 449, 863 A.2d 998 (2004), we explained:

> Rebuttal evidence is within a trial court's sound discretion and will not be disturbed on appeal unless there is an abuse of discretion. *State v. Booze*, 334 Md. 64, 68 [637 A.2d 1214] (1994). Rebuttal evidence is admissible when it " 'explains, or is a direct reply to, or a contradiction of, any new matter that has been brought into the case by the accused.' " *Id.* at 70 [637 A.2d 1214] (citations omitted).

*Hyman*, 158 Md.App. at 631, 857 A.2d 1166. *See also Rollins v. State*, 161 Md.App. 34, 89, 866 A.2d 926 (2005) ("The trial court has the discretion to determine what constitutes rebuttal evidence and will be reversed only if it is manifestly wrong and substantially injurious.") (internal quotations and citations omitted), *aff'd, Rollins v. State*, 392 Md. 455, 897 A.2d 821, *cert. denied, Rollins v. Maryland*, 549 U.S. 959, 127 S.Ct. 392, 166 L.Ed.2d 280 (2006).

What appellant had stated to the probation agent during the recorded telephone call was offered in response to alibi evidence introduced into the case by appellant's witnesses. At the point in the trial, alibi became a contested issue. In that telephone communication, appellant provided his probation agent with what could be reasonably considered as a different alibi from the alibi offered at trial. He stated that he "didn't have anything to do with the [carjacking]" because he "was with [his] mom and girlfriend that day;" he did not state that he was with Slaughter in a car borrowed from his father. As explained above, the court weighed the probative value against any prejudice toward appellant and found the probative value to be greater. *See Alban v. Fiels*, 210 Md.App. 1, 24, 61 A.3d 867 (2013) ("Probative value is outweighed by the danger of unfair prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy

needlessly injected into the case.") (internal quotations and citations omitted). Because we are persuaded that, in the context of the case, the evidence at issue would not produce such an emotional response, we perceive neither error nor an abuse of discretion in admitting the recorded telephone conversation.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**