*Ronald Sinclair v. State of Maryland*
No. 43, 2014 Term


**Criminal Procedure - Mandatory Pretrial Motions - Waiver.** Maryland Rule 4-252 directs that a motion to exclude evidence on the ground that it was derived from an unlawful search be filed within a certain time period in advance of trial, that the motion state the factual and legal grounds for exclusion of evidence, and that the motion be decided in advance of the trial. Failure to comply with the rule waives the motion, unless the trial court finds good cause for non-compliance. The filing of a bare bones "omnibus" motion that was later withdrawn "without prejudice," resulting in cancellation of the scheduled motions hearings, followed seven months later by an oral motion to exclude evidence on the morning of trial, without a showing of good cause for the delay, did not comply with the rule and waived the motion to exclude evidence.


**Constitutional Law - Search and Seizure - Search Incident to Arrest - Cell Phones**. A police officer who seizes a cell phone incident to a valid arrest may inspect and secure the cell phone, but may not search the data on the cell phone unless the officer secures a warrant or another exception to the warrant requirement, such as exigent circumstances, applies. When an officer seizes a flip phone incident to a lawful arrest, the officer may view and photograph a screen saver image that is in plain view when the officer physically flips the phone open to inspect and secure the phone. But a warrant – or applicable exception to the warrant requirement – is necessary for the officer to view data in the phone that is not in plain view.

IN THE COURT OF APPEALS
OF MARYLAND

No. 43

September Term, 2014

RONALD SINCLAIR

v.

STATE OF MARYLAND

Barbera, C.J.
*Harrell
Battaglia
Greene
McDonald
Watts
Raker, Irma S.
   (Retired, Specially Assigned),

JJ.

Opinion by McDonald, J.

Filed:  July 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Petitioner Ronald Sinclair was convicted of various charges related to a carjacking. Part of the evidence against him was derived from a flip cell phone that was seized from him incident to his arrest – screen images that matched the custom wheel rims of the stolen car. He sought to exclude that evidence from his trial in an oral motion made by his attorney on the morning of trial. The Circuit Court allowed the use of that evidence and the Court of Special Appeals affirmed that decision. Before us, Mr. Sinclair relies on the Supreme Court's intervening decision in *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473 (2014) to argue that the arresting officer's review of photos on the cell phone without a warrant was an unconstitutional search and that the evidence derived from the cell phone should have been suppressed.

We hold that, in failing to make his motion to suppress the evidence derived from his cell phone within the time period and with the specificity required by the Maryland Rules, Mr. Sinclair waived that motion. Moreover, even had the motion been made in a timely manner, the primary evidence obtained from the cell phone – the screen saver image that was in plain view upon physical inspection of the phone – was admissible under the Supreme Court's decision in *Riley*.

# Background

## A.    *Charges, Evidence, Verdict, Sentencing, and Appeal*

In two indictments that were consolidated for trial, Mr. Sinclair was charged with carjacking and related offenses, various firearms offenses, and possession of illicit drugs. The evidence presented at trial showed the following:

On the evening of April 29, 2010, Thomas Gaines stopped at a gas station in Camp Springs to refuel his Dodge Charger – a car for which he had paid $36,000 and purchased a special set of custom wheel rims.  When he pulled into the station, Mr. Gaines noticed two men speaking on a phone.  As he filled his gas tank, one of the men approached him and asked if he wanted to buy "some weed."  He declined, but when he turned to get in his car, the other man was standing in his way.  The first man put a gun to Mr. Gaines' side while the other searched him and took his wallet, cash, and phone.  The two men entered his car and drove away.  At trial Mr. Gaines identified Mr. Sinclair as the man who had offered to sell him marijuana and who had put a gun to his side.

The gas station clerk, Gamadanayau Salami,[1] saw the two men approach Mr. Gaines, pull out a gun, search through Mr. Gaines' pockets, and "zoom off" in Mr. Gaines' car.  Mr. Salami called 9-1-1.  He was unable to see the men's faces from inside his cubicle and could

___

[1] Mr. Salami is also referred to in the record variously as Mr. Gamadanayau, Mr. Salami Adechina, and Salami Ganiyu Adeshina.  We refer to him by the name he gave and spelled for the court reporter at trial.

not identify the man who held the gun.  Although it was night, both Mr. Salami and Mr. Gaines testified that the gas station was well-lit and that they could see clearly.

The next day, at approximately 3 or 4 p.m., Mr. Gaines and his girlfriend spotted his Dodge Charger backed into a parking space in the lot of a strip shopping center in Temple Hills.  He asked his girlfriend to go to a nearby police car to summon the police while he blocked in the Charger with the vehicle they were driving so that the stolen car could not be driven out of the parking lot.  He also recognized Mr. Sinclair, who was inside a barber shop in the strip shopping center, as one of the men who had robbed him the previous night.  He noticed that Mr. Sinclair kept looking at him.

Shortly thereafter, Officer Kevin Stevenson of the Prince George's County Police Department, who had responded to the gas station the previous night, was dispatched to the shopping center.  He  verified that the Charger was Mr. Gaines' car, and waited with Mr. Gaines at a distance for Mr. Sinclair to leave the barber shop.  After approximately 45 minutes, Mr. Sinclair left the barber shop while talking on his cell phone and entered a car that pulled up to the curb.

Officer Stevenson stopped the car and ordered its occupants onto the curb.  He saw bags of marijuana on the floor boards where Mr. Sinclair had been sitting.  Although the officer had instructed Mr. Gaines to keep his distance from the traffic stop, Mr. Gaines walked up to Mr. Sinclair and told Officer Stevenson again that Mr. Sinclair was the man

3

who had stolen his car. Officer Stevenson placed Mr. Sinclair under arrest and recovered cash, suspected cocaine, and a cell phone from his pockets.

The cell phone was a Samsung "flip" phone designed for use on the T-Mobile network. Officer Stevenson testified at trial that, shortly after recovering it from Mr. Sinclair, he opened the phone and saw a screen saver image (sometimes also referred to as a "wallpaper" image) of a wheel rim and fender that matched the wheel rim and color of the stolen car. The officer scrolled through the photos on the phone. In addition to a photograph of the screen saver image, two other photographs of the cell phone screen were introduced into evidence – an image of a photo identical to the screen saver image and an image of a "properties" screen[2] that indicated "sent" on "04/30/10 7:00...".[3]

Photographs of the cell phone's screen showing the screen saver image, the identical image from the phone's photo library, and the screen of that photo's properties were all admitted into evidence. Also introduced into evidence were photos of Mr. Gaines' car and a close-up of one of its wheels, which appears identical to the screen saver image from Mr. Sinclair's phone.

---

[2] A digital file's properties, also sometimes called metadata, are details about the file, which can include, for example, the type of file, its size, the date it was created, and its storage location on the electronic device. *See* J. Boyce, Windows® 7 Bible (2009) (Chapter 31 – "Metadata and Power Searches") (electronic version) at 2143-47.

[3] The properties screen does not specify what was "sent" or how it was sent. Nor did the screen image indicate whether "7:00" meant 7 a.m. or 7 p.m.

The parties stipulated that Mr. Sinclair was prohibited from possessing a regulated firearm as a result of a prior disqualifying conviction. A forensic chemist testified she had tested the suspected cocaine recovered from Mr. Sinclair and that it was in fact crack cocaine.

The defense case was an alibi presented through the testimony of Mr. Sinclair's father and a friend named Jason Slaughter. Mr. Slaughter testified that, on the evening of April 29, 2010, he and Mr. Sinclair had borrowed a car from Mr. Sinclair's father to go the mall. Mr. Slaughter testified that, after borrowing the car, the two men had spent the night "hanging out" at a mall and a restaurant before returning home. Mr. Sinclair's father agreed that he had lent them the car that night, but did not have further information about their activities as he had gone to bed before they returned.

In rebuttal, the prosecution played a recording of a post-arrest telephone call that Mr. Sinclair had with his probation agent in which he asserted that the identification of him as the carjacker was mistaken because he had been with his mother and his girlfriend at the time. He did not mention borrowing his father's car or spending the evening with Mr. Slaughter.

The jury found Mr. Sinclair guilty of armed carjacking, carjacking, robbery with a dangerous weapon, robbery, first and second degree assault, theft, theft over $10,000, use of a handgun in commission of a crime of violence, wearing a handgun, conspiracy to commit armed carjacking, possession of cocaine and possession of a regulated firearm by a

5

disqualified person.[4] The trial court merged several counts for purposes of sentencing and sentenced him to a total of 40 years imprisonment.[5]

Mr. Sinclair appealed his conviction on several grounds. The Court of Special Appeals found no merit in any of them and affirmed his convictions. 214 Md. App. 309, 76 A.3d 442 (2013).

Mr. Sinclair then filed a petition for a writ of *certiorari* limited to the question of the constitutionality of the search of the contents of his cell phone and noted that the Supreme Court was then considering whether to grant a writ of *certiorari* in two cases involving a similar issue.[6] Shortly thereafter, the Supreme Court agreed to review the issue, consolidated the cases, and decided them during its 2013 term. *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473 (2014). We then granted *certiorari* in Mr. Sinclair's case to consider Mr. Sinclair's

---

[4] Mr. Sinclair was acquitted of possession of marijuana. At the end of the State's case, the prosecution *nolle prossed* a charge of unauthorized use of a motor vehicle and agreed to amend the indictment to reduce a charge of theft of property valued between $1,000 and $10,000 to theft of property without a specific value.

[5] In particular, on August 26, 2011, the court sentenced Mr. Sinclair to 20 years imprisonment for armed carjacking; 20 years consecutive for use of a handgun in a felony or crime of violence; 20 years for conspiracy to commit armed carjacking to run concurrent with the sentence imposed for armed carjacking; and 4 years concurrent for possession of cocaine. Other convictions were merged for purposes of sentencing. On December 16, 2011, the court sentenced Mr. Sinclair to five years imprisonment without the possibility of parole for possession of a regulated firearm by a prohibited person concurrent to the sentences imposed on August 26, 2011.

[6] Resolution of this issue would not appear to affect Mr. Sinclair's conviction and sentence for possession of cocaine as there appears to be no contention concerning the constitutionality of the seizure of the cocaine at the time of his arrest.

arguments in light of the *Riley* opinion. We also granted the State's conditional cross petition, which raised the question of whether Mr. Sinclair had waived the issue in the Circuit Court, asserted that the officer's viewing of the screen saver image was permissible under *Riley*, and argued that any error in the admission of the evidence was harmless. Because the State has questioned the timeliness of Mr. Sinclair's effort to suppress the three photographs of images from his cell phone, we turn briefly to the circumstances under which the issue was raised and decided in the Circuit Court.

**B.     *Motion to Exclude Evidence Obtained from Cell Phone***

Mr. Sinclair was arraigned on the initial indictment in the Circuit Court for Prince George's County on July 30, 2010 and referred to the Public Defender. The court scheduled a pretrial motions hearing for September 24, 2010, and a trial to commence on October 19, 2010.

Less than a week after the arraignment, on August 5, 2010, an Assistant Public Defender entered his appearance as counsel for Mr. Sinclair, and filed a one-page pleading entitled "Entry of Appearance, Election for Jury Trial, Mandatory Motions, and Motion for Discovery and Inspection." Among other things, it sought dismissal of the indictment, elected a jury trial, moved to sever the trial of co-defendants[7] and charges, requested discovery, moved to exclude evidence, and demanded a speedy trial. Such a pleading, at

_____

[7] There were no co-defendants in the case.

7

once both comprehensive and cryptic, is sometimes referred to as an "omnibus motion."[8]
With respect to the suppression of evidence, a one-sentence paragraph in the pleading stated
that the defendant "[m]oves to suppress any and all evidence obtained by the State in
violation of defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to
the Constitution of the United States, and the Maryland Declaration of Rights."

On September 2, 2010, the Assistant State's Attorney assigned to the case sent defense
counsel a letter asserting that, as a pretrial suppression motion, the pleading did not comply
with Maryland Rule 4-252(e)[9] and "d[id] not put the State on notice of any issues that you
actually wish to raise … and what legal precepts support your position." The letter noted that
discovery was being provided to the defense and advised defense counsel to update the
pleading with specific motions to which the State would respond. Under cover of another
letter of the same date, the prosecutor provided documentary discovery and invited defense
counsel to make an appointment to inspect the physical evidence in the case. In yet another
pleading filed that same date, the prosecution notified defense counsel of the seizure of the
cell phone and drugs from Mr. Sinclair, as further detailed in the discovery materials.

On the date of the pretrial motions hearing, September 24, 2010, the Assistant Public
Defender filed a "Line Withdrawing Motions" which stated that all motions were withdrawn

---

[8] *E.g., Denicolis v. State*, 378 Md. 646, 660, 837 A.2d 944 (2003).

[9] Rule 4-252(e) requires that "A motion ... shall state the grounds upon which it is made, and shall set forth the relief sought.... Every motion shall contain or be accompanied by a statement of points and citation of authorities." See Part II.B. of this opinion.

8

"without prejudice." As a result, the scheduled motions hearing was canceled as "moot." The trial date was later postponed to January 26, 2011.

On the date scheduled for trial, January 26, 2011, the Assistant Public Defender appeared in court and withdrew from the case in favor of private counsel newly retained by Mr. Sinclair. When asked whether he was ready to go to trial, the new defense counsel told the court, "I have prepared some, but I believe there's additional discovery I would seek. And I believe there might be a motion or two I would wish to litigate." With the assent of Mr. Sinclair, the court postponed the trial and scheduled another motions hearing for March 4, and trial for March 17. The March 4 hearing date was later continued to March 11, apparently because a new Assistant State's Attorney was to enter the case.

No pretrial motions were filed by the new defense counsel. Docket entries for March 11, 2011 indicate that the motions had been "withdrawn without prejudice" – apparently a reference to the withdrawal of the omnibus motion – and that the motions hearing scheduled for that date was therefore moot.[10] A few days later, the court granted the State's motion to consolidate the firearms charge with the carjacking related offenses for trial and a defense motion to postpone the trial, on the ground that discovery had not been made in a timely manner. The new trial date was April 19, 2011.

---

[10] A court form in the court file for that date similarly indicates "motions withdrawn without prejudice" – also apparently a reference to the earlier withdrawal of the omnibus motion, as no other defense motions had been filed in the interim.

9

On April 19, 2011, immediately after the clerk called the case and counsel introduced themselves, the court said: "The jury's coming up, on its way. Are getting lined up. Anything we can do while we wait?" Defense counsel responded: "Yes, Your Honor, there's two issues that the Defense would like to raise *in limine* prior to commencing trial." Mr. Sinclair's counsel then objected to admission of the cell phone pictures on the grounds that they were obtained in violation of the warrant requirement of the Fourth Amendment.[11] He described the search: "The law enforcement officer opens the cell phone, goes through it, and apparently pulls out what purports to be some photographs." He posited that "there's been some case law about if the phone is just opened … that might be permissible, Your Honor, but here the State did more in the absence of a warrant." Mr. Sinclair's counsel described in some detail cases from Ohio and Colorado[12] supporting his position, but noted that no Maryland appellate court had addressed the issue.

The prosecutor responded: "I'm glad [defense counsel] stopped at the Court of Appeals, because the Fourth Circuit has, in fact, looked at this and addressed this as a valid search incident to arrest." He continued: "Now, I'll be honest, I do not have that case in front

---

[11] *See also* Maryland Declaration of Rights, Article 26.

[12] Although he did not provide citations, defense counsel was apparently referring to *Ohio v. Smith*, 920 N.E. 2d 949 (2009) and *Colorado v. Schutter*, 249 P.3d 1123 (2011).

of me because we have already litigated motions, time has been passed and so on and so forth so I had no notice that this will be raised[.]"[13]

The trial court denied the motion to suppress, stating that the search of the cell phone was a valid search incident to arrest.[14] The court made no fact findings and did not further explain its legal conclusion. Photographs of three cell phone images were later admitted in evidence at trial.

## II

### Discussion

The sole issue raised by Mr. Sinclair is whether the three photographs of his cell phone screen should have been excluded from the evidence at trial on the ground that they were obtained by Officer Stevenson in violation of the Fourth Amendment. The State raises a preliminary question as to whether Mr. Sinclair's suppression motion complied with Maryland Rule 4-252 and, if not, whether he has waived consideration of his Fourth Amendment claim.

### A.   *Standard of Review*

In reviewing a trial court's decision to grant or deny a motion to suppress, an appellate court ordinarily limits its review to the record of the motions hearing. *Trusty v. State*, 308

---

[13] Although he had neither the name or the citation of the case at hand, the prosecutor was apparently referring to *United States v. Murphy*, 552 F.3d 405 (4th Cir. 2009).

[14] The defense also argued that the time stamp on the third image from the cell phone was hearsay that could not be admitted without expert testimony. The court rejected that contention and Mr. Sinclair has not reiterated it on appeal.

Md. 658, 669-72, 521 A.2d 749 (1987). The evidence is viewed in the light most favorable to the prevailing party, and the trial court's fact findings are accepted unless clearly erroneous. *Williamson v. State*, 413 Md. 521, 531, 993 A.2d 626 (2010). "The ultimate determination of whether there was a constitutional violation, however, is an independent determination that is made by the appellate court alone, applying the law to the facts found in each particular case." *Belote v. State*, 411 Md. 104, 120, 981 A.2d 1247 (2009) (citations omitted); *see also Carter v. State*, 367 Md. 447, 457, 788 A.2d 646 (2002).

## B.    *Whether Mr. Sinclair's Motion Complied with Rule 4-252*

### 1.    Maryland Rule 4-252

Maryland Rule 4-252 governs the form, content, and timing of a motion to suppress evidence allegedly obtained as the result of an unlawful search. It states, in relevant part:

> **(a) Mandatory Motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise: … (3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification; …
>
> **(b) Time for Filing Mandatory Motions.** A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4-213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished.
> …
> **(e) Content.** A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for

12

probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citation of authorities.

**(f) Response.** A response, if made, shall be filed within 15 days after service of the motion and contain or be accompanied by a statement of points and citation of authorities.

**(g) Determination.** (1) *Generally*. Motions filed pursuant to this Rule shall be determined before trial and, to the extent practicable, before the day of trial …. If factual issues are involved in determining the motion, the court shall state its findings on the record.…

Maryland Rule 4-252 provides for the orderly resolution of suppression motions. Pertinent to this case, a motion to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment must normally be filed within 30 days of the first appearance of the defendant; it may be filed later if the basis for the motion only becomes evident from discovery, in which case the motion must be filed within five days. As to content, the motion must ordinarily be in writing, state the basis for suppression of evidence, and set forth the legal authority on which it is based. A written response by the State must be filed promptly and also provide supporting legal authority. A court should resolve the motion before the trial – ideally before the day of trial – and make any necessary fact findings on the record. A deviation from these requirements must be justified by "good cause."

The rule is thus designed to facilitate the fair consideration of a suppression motion in advance of trial. "The obvious and necessary purpose of [Rule 4-252(e)] is to alert both the court and the prosecutor to the precise nature of the complaint, in order that the

13

prosecutor have a fair opportunity to defend against it and that the court understand the issue before it." *Denicolis v. State*, 378 Md. 646, 660, 837 A.2d 944 (2003); *see also Jones v. State*, 395 Md. 97, 116, 909 A.2d 650 (2006) ("a defendant must state sufficient information to put the court and State on notice of the evidence he or she wishes to suppress and the basis therefore. Neither the trial court nor the prosecutor should be surprised at the hearing.").[15]

Although Rule 4-252 is unambiguous in setting a time limit and requiring some detail as to the basis for a suppression motion, it also grants trial courts discretion to hear non-compliant motions "for good cause shown." In *Denicolis,* this Court observed that some trial courts allow defense counsel to file timely an omnibus motion "seeking a panoply of relief

---

[15] The rule's directive to file and litigate suppression motions in advance of trial was a deliberate policy decision of this Court. Prior to 1977, the predecessor rule provided that "[a]ny defense or objection capable of determination without the trial of the general issue *may* be raised before trial by motion." Maryland Rule 725(b) (1971 Repl. Vol.) (emphasis added); *see also Shrout v. State*, 238 Md. 170, 173-74, 208 A.2d 585 (1965).

In 1977, the Court adopted Rule 736, which included motions alleging an unlawful search or seizure on a list of mandatory motions and which required that mandatory motions be filed "within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court … except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after discovery is furnished." Failure to file a timely motion would result in a waiver, unless the court found good cause to order otherwise. The evident purpose was to adopt the approach of Federal Rule of Criminal Procedure 12. *See Kohr v. State*, 40 Md. App. 92, 98, 388 A.2d 1242 (1978) ("Both rules are identical in that they require that motions to suppress be filed pre-trial and both consider a failure to raise timely objections to the admissibility of unlawfully seized evidence to constitute a waiver.").

In 1984, Rule 4-252 replaced Rule 736, retaining the listing of mandatory motions, deadlines, and other requirements relating to suppression motions. Although the rule has been amended in other respects, those provisions remain unchanged.

based on bald, conclusory allegations devoid of any articulated factual or legal underpinning," and later supplement that motion to flesh out the specific grounds at or before a motions hearing. 378 Md. at 660. Courts exercise their discretion to hear those non-compliant motions in light of "the time constraints under which defense counsel and *pro se* defendants often operate." *Id*. The Court acknowledged that "[a]lthough that practice is not what the Rule anticipates and is not to be encouraged, we have not disturbed the discretion of the trial courts to permit [that practice], at least where the State is not unduly prejudiced." *Id*; *see also Phillips v. State*, 425 Md. 210, 216 n.4, 40 A.3d 25 (2012); *Jones* 395 Md. at 103 n.3.

2. Application to this case

The requirements of Rule 4-252 were not satisfied in this case, as is evident from the following time line:

| | |
|---|---|
| **July 30, 2010** | Mr. Sinclair is arraigned in the Circuit Court and is referred to the Public Defender for representation. A pretrial motions hearing is scheduled for September 24, 2010, with the trial to follow on October 19, 2010. |
| **August 5, 2010** | An Assistant Public Defender enters his appearance and files an "omnibus" motion that includes a sentence seeking suppression of "any and all evidence obtained by the State in violation of the defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States, and the Maryland Declaration of Rights." |
| **September 2, 2010** | The Assistant State's Attorney sends discovery to the defense, including information concerning the seizure of Mr. Sinclair's cell phone and also sends a letter noting that the omnibus motion is deficient under Rule 4-252 and requesting that the basis for |

15

any suppression motion be explained, so that the State may respond.

**September 24, 2010**  On the date of the pretrial motions hearing, defense counsel files a line stating that "all motions ... are hereby withdrawn without prejudice." As a result, the motions hearing is cancelled.

**January 26, 2011**  The court postpones the trial when a privately retained counsel enters his appearance on behalf of Mr. Sinclair. New defense counsel states that he may wish to litigate pretrial motions and the court schedules a pretrial motions hearing for March 4 (later changed to March 11). However, no new motions are filed.

**March 11, 2011**  The pretrial motions hearing is canceled, again on the basis that the motions had been withdrawn.

**March 17, 2011**  Trial is continued to April 19 at the request of Mr. Sinclair's counsel on the basis that "discovery not timely provided."

**April 19, 2011**  On the morning of the first day of trial, as the jury panel is en route to the courtroom, defense counsel orally makes a motion *in limine* to suppress the photographs of the screen of Mr. Sinclair's cell phone. The prosecutor protests that he is unprepared for the motion and that it is too late for such a motion. The trial court does not conduct an evidentiary hearing. After hearing argument and a brief factual proffer from defense counsel and legal argument from both sides, the court orally denies the motion.

Although the "omnibus" motion filed by Mr. Sinclair's initial counsel may have been timely,

it did not specifically seek suppression of evidence derived from his cell phone nor did it

provide factual allegations or legal authority to support such an action. It thus did not state

the grounds upon which suppression of evidence was sought, as required by Rule 4-252(e).

*Ray v. State*, 435 Md. 1, 15, 76 A.3d 1143 (2013); *see also Miller v. State*, 380 Md. 1, 49,

843 A.2d 63 (2004) ("omnibus" motion that generally asserted that evidence was seized in

violation of constitutional rights did not satisfy Rule 4-252(e)).  Perhaps that defect in the motion was attributable to the fact that the Assistant Public Defender had not yet received discovery.  However, no supplemental motion was filed within five days after discovery (including specific notice of seizure of the cell phone) was provided in September 2010, as required by Rule 4-252(b).  Instead, a few weeks later, the Assistant Public Defender withdrew all pretrial motions – thereby cancelling the pretrial motions hearing.[16]

At the time he entered his appearance in January 2011, Mr. Sinclair's new attorney did alert the court to the possibility that there would be a pretrial motion to be litigated, with the result that the court scheduled a new motions hearing in advance of the trial date.  But defense counsel filed no motions during the next three months and acquiesced in the cancellation of the pretrial motions hearing.

It was not until the morning of trial – approximately seven months after the omnibus motion had been withdrawn – that the defense "supplemented" that motion by specifically seeking suppression of the cell phone evidence.  Although defense counsel had evidently

---

[16] The Court of Special Appeals held that the timing requirements of Rule 4-252 were satisfied by the omnibus motion and that its withdrawal "without prejudice" preserved the right to raise issues in a motion *in limine*.  214 Md. App. at 323-24.  The intermediate appellate court appeared to believe that the trial court had approved the withdrawal "without prejudice," although the withdrawal was not framed as a motion and there is no explicit approval of it expressed by the Circuit Court in the record.

Even were we to accept that the unilateral withdrawal of a mandatory motion "without prejudice" preserved a right to refile it at a later date – a question we do not decide here – the most Mr. Sinclair may have done for purposes of Rule 4-252 was to preserve his compliance with the 30-day deadline.

17

researched the issue and cited specific out-of-state cases in support of his motion, he did not file a written motion and apparently had not notified the prosecution of the motion or the authorities on which it was based. The prosecutor protested that the motion was late, as indeed it was. Defense counsel did not suggest any particular reason for failing to comply with the rule, and the court did not make a finding of good cause. Ordinarily, that would mean that the motion was waived. *See* Rule 4-252(a).

## C.     *Whether Non-Compliance with Rule 4-252 was a Waiver*

Mr. Sinclair "acknowledges that the omnibus motion did not comply with Rule 4-252(e) as it did not describe the particular issue defense counsel intended to raise, nor did it cite legal authority in support of any particular argument." He contends, however, that the prosecutor did not actually object[17] and that, in any event, the Circuit Court implicitly found good cause to excuse the non-compliance and properly exercised its discretion to hear the belated oral motion.[18] However, there must be a basis for such a finding and none is evident

---

[17] Mr. Sinclair suggests that the prosecutor's statement was simply an explanation why he was unprepared to respond to the motion and not an objection to the late filing. Nevertheless, the statements that the "time has been passed," "we have already litigated motions" and "I had no notice" appear to be objections that speak to the purpose of the requirements of Rule 4-252.

[18] The Court of Special Appeals agreed that either the prosecution had waived any objection based on Rule 4-252 or that the trial court had implicitly found good cause to consider the oral motion in limine despite its non-compliance with the rule. 214 Md. App. at 324-25.

18

in this record.[19]  To conclude that there was a waiver in this case in the absence of any showing or findings of good cause does not require a departure from this Court's past willingness to allow trial courts discretion to find good cause for non-compliance with the rule.[20]

As the Court in *Denicolis* indicated, a key concern in determining whether to excuse non-compliance with the rule and permit a belated supplement is whether it results in "undue prejudice" to the State.  378 Md. at 660.  Mr. Sinclair argues that there was no prejudice, as the prosecutor understood the issue, correctly referenced a relevant Fourth Circuit case – although not by name – and prevailed when the Circuit Court denied the suppression motion.

But the failure to comply with the rule resulted in a truncated motions hearing with the jury panel at the door.  The only "facts" developed at the motions hearing – the record to which we are limited in considering the trial court's ruling – was the proffer by Mr. Sinclair's counsel that "[t]he law enforcement officer opens the cell phone, goes through it,

---

[19] At oral argument before this Court, Mr. Sinclair's counsel asserted that the lateness of the motion may have been attributable to late provision of discovery by the State. However, this was not briefed, and as noted above, the record shows that the State disclosed to Mr. Sinclair that it had seized a cell phone in early September 2010, seven months before the trial.

[20] It is understandable that a trial court, presented with a suppression motion on the morning of trial, will be tempted to resolve the motion substantively – particularly if the motion appears to lack merit – and avoid the Monday morning quarterbacking that future post-conviction litigation may entail.  Here, however, the issue was not a simple one and the belated raising of the issue resulted in a motions hearing that substituted a very brief proffer for factfindings, and a legal argument in which one side presented detailed summaries of out-of-state cases without citation and the other side alluded to an unnamed federal case.

and apparently pulls out what purports to be some photographs." Here, Mr. Sinclair's failure to comply prejudiced the State by depriving it of the opportunity to develop an appropriate record.[21]

At oral argument, Mr. Sinclair sought to cure the prejudice by conceding that Officer Stevenson would have testified – as he did at trial – that, when he opened the phone, he saw the first image in plain view as a screen saver. Mr. Sinclair also contended that, even if the motion had been properly made and the trial court had held an evidentiary hearing, the findings of fact and analysis would not have changed. However, evidence adduced at a pretrial motions hearing is often more detailed and quite distinct from what is presented to a jury at trial. A pretrial suppression hearing will necessarily explore details of an arrest or search that have no bearing on a trial jury's determination of guilt or innocence. This Court has been skeptical of the notion that a trial record provides an adequate substitute on which to decide a belated suppression motion. *See Perry v. State*, 344 Md. 204, 226-27, 686 A.2d 274 (1996) ("Even though [the defendant] is now willing to treat the trial record as a

---

[21] Mr. Sinclair suggests that, even if there had been a pretrial motions hearing, the State would have adduced nothing more as to the circumstances of the seizure and search of the cell phone than it did in trial testimony and that, because *Riley* had not yet been decided, it would have relied only on the exception for a search incident to an arrest. Perhaps. But more than a few attorneys adopt a belt-and-suspenders approach when dealing with an unsettled legal question with time to prepare a response and this argument simply invites speculation that the rule was designed to eliminate.

suppression hearing record, that waiver cannot deprive the State of the procedure to which it is entitled.").[22]

The flexibility contemplated by the Court in *Denicolis* involves situations in which a defendant files a bare-bones suppression motion and then supplements it with more specific information before or at the motions hearing. Here, no supplement was ever filed, the bare bones motion was in fact withdrawn, and the scheduled motions hearing was canceled as moot. Rather, a new motion with specific grounds and authorities was orally made for the first time at trial. Thus, not only did Mr. Sinclair's motion fail to comply with Rule 4-252, it did not even come within the permissive deviation from the rule that *Denicolis* recognized that a trial court might allow.

If a defendant may file a bare bones motion that provides no notice as to the evidence it seeks to suppress or the reasons for doing so, withdraw that motion to avoid its disposition at a pretrial motions hearing, renew it with the missing detail on the morning of trial without any showing that there is "good cause" for the belated action and without time for an evidentiary hearing, and then litigate the issue on appeal without an adequate factual record, Rule 4-252 will have been completely defeated. That is what happened here.

---

[22] In *Perry,* the defendant moved to suppress evidence for the first time in the middle of a long murder trial. The trial court found the issue waived and denied the motion. This Court affirmed, noting that the State is bound to the suppression hearing record on appeal. The Court held that "the parties should be given substantially the same opportunity to develop a factual record, and legal arguments based thereon … that they would have enjoyed in presenting and responding to a pretrial suppression motion." 344 Md. at 226.

21

We are willing to assume that this was not a deliberate tactic to sandbag an opposing party. Perhaps it can be ascribed, at least in part, to Mr. Sinclair's decision to change counsel mid-stream. But if we countenance it in this instance we are giving license to such tactics in the future.

## D. *Whether the Images of the Cell Phone Screen Were Obtained Unlawfully*

Although we hold that, pursuant to Rule 4-252, the defense waived a motion to suppress the cell phone images in this case, the seizure of a cell phone in connection with an arrest is likely to be a common occurrence. In an effort to provide guidance to the trial courts in light of the *Riley* decision, we explain why at least one of the photographs at issue on this appeal would be admissible and why the admission of the others, even if derived from an unlawful search, would be harmless error.[23]

### 1. *Riley v. California*

The Supreme Court's opinion in *Riley* resolved two cases that the Court had consolidated for decision. In those cases, appellate courts had reached different conclusions

---

[23] The State contends that, if waiver is found under Rule 4-252, the Court should not exercise the discretion afforded under Rule 8-131(a) to decide issues not raised or decided in the trial court. *See, e.g., Savoy v. State*, 218 Md. App. 130, 138-42, 96 A.3d 842 (2014). Mr. Sinclair argues that the Court should not reach that question because (1) there was no waiver under Rule 4-252 and (2) the issue was raised and decided in the Circuit Court, so that discretionary review provision of Rule 8-131(a) does not apply. We agree with Mr. Sinclair that, because the trial court did reach the issue, we do not rely on the discretionary review provision of Rule 8-131(a). Our views in this section of the opinion are more in the nature of an alternative holding or dicta.

as to the constitutionality of a warrantless search of data contained on a cell phone seized from a defendant incident to the defendant's arrest.

In the first case, *Riley v. California,* a police officer stopped Riley for driving with expired registration tags, discovered that his license was suspended, and then arrested him when an inventory search of the car revealed firearms in violation of California law. When the officer searched Riley incident to the arrest, he found gang-related items and a smart phone. The officer accessed information in the smart phone, finding gang-related photos and videos and a photograph linking Riley to a shooting.

In the companion case, *United States v. Wurie*, a police officer observed Wurie make a drug sale from a car, arrested him, and seized two cell phones incident to that arrest. One of the phones, a flip phone, repeatedly received calls from a source identified as "my house" on the phone's external screen. The officers opened the phone and observed an image of a woman and baby as the screen saver. They accessed the call log on the phone to obtain the number associated with "my house" and used a phone directory to trace that phone number to an address. When they went to that address they observed Wurie's name on the mailbox and saw inside a woman who resembled the image on the screen saver. They obtained a search warrant for the apartment and recovered illegal drugs, drug paraphernalia, a firearm and ammunition, and cash.

In both cases, the trial courts denied motions to suppress the evidence derived from the searches of the cell phones and upheld the searches as valid searches incident to arrest.

23

The California Supreme Court affirmed the trial court decision in *Riley*; a divided panel of the First Circuit reversed the denial of the suppression motion and conviction in *Wurie*.

In its opinion, the Supreme Court acknowledged that a search of a person incident to an arrest is a well-recognized exception to the Fourth Amendment's warrant requirement. 134 S.Ct. at 2482. To assess the reasonable scope of such a search with respect to the contents of a cell phone, the Court first reviewed its three major precedents that molded the search incident to arrest exception: *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973); and *Arizona v. Gant*, 556 U.S. 332 (2009). 134 S. Ct. at 2483-84.

In *Chimel*, the Court had articulated two justifications underlying a search incident to arrest: evidence preservation and officer safety.[24] 395 U.S. at 762-63. Consistent with those rationales, the Court limited the scope of that search to "the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id*. at 763.

In *Robinson*, the Court had explained that, while the general rationale for a warrantless search incident to arrest rested on officer safety and evidence preservation, the validity of a particular search did not depend on the probability of finding weapons or

_____

[24] In a concurring opinion in *Riley*, Justice Alito noted that *Chimel* actually involved a search of a house and contended that historically the search-incident-to-an-arrest rule as regards a search of the arrestee was not closely linked to these two justifications. 134 S. Ct. at 2495-96.

24

evidence on the particular arrestee. It upheld an officer's search of a cigarette packet found on the arrestee, even though the packet was not likely to hold a weapon or evidence relevant to the offense justifying the arrest – driving with a revoked license. The Court reasoned: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U.S. at 235.

Finally, in *Gant*, the Court had held that police may search a vehicle incident to arrest, but "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" – hearkening back to the concerns for officer safety and evidence preservation stated in *Chimel.* 556 U.S. at 343. The Court also noted the applicability of an independent exception to the warrant requirement "unique to the vehicle context." *Id*.

Following this review, the Court then turned to the cell phone searches in *Riley* and *Wurie*. It assessed, "'on the one hand, the degree to which [a given type of search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Riley*, 134 S.Ct. at 2484 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The Court noted that "a mechanical application of *Robinson* might well support the warrantless [cell phone] searches." However, because digital data does not present the normal risks to officer safety or destruction of evidence, and because cell phones contain a vast quantity and quality of personal

information, the Court held "that officers must generally secure a warrant before conducting such a search." *Id*. at 2484-85.

The Court analyzed the two rationales cited in *Chimel* in the context of a cell phone. With respect to officer safety, the Court affirmed an officer's authority to "examine the physical aspects of a phone to ensure that it will not be used as a weapon – say, to determine whether there is a razor blade hidden between the phone and its case." *Riley*, 134 S.Ct. at 2485. Put another way, officers may "secure[] a phone and eliminate[] any potential physical threats." *Id*. Even if it is unlikely that an item could be dangerous, "unknown physical objects may always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest." *Id*. Once those concerns are accounted for, officers may secure, but not search, cell phones until they obtain a warrant. *Id*. at 2486.

As for the rationale of evidence preservation, the prosecution in each case argued that digital data on cell phones was vulnerable to remote wiping or might be locked through encryption. The Court first discussed the limited ability of an arresting officer to deal with those concerns,[25] and then noted that officers have other options to prevent remote wiping:

---

[25] First, the arrestee would not be the one damaging evidence in the case of remote wiping or encryption; rather, it would be a third party or an automatic setting in the phone. Second, there was no indication that remote wiping and encryption are prevalent problems. Third, at the scene of an arrest, officers are focused on the arrest and securing the scene, and would probably not search the data in a cell phone immediately. It is therefore doubtful that an arresting officer would be able to prevent remote wiping or encryption even if the officer could search the phone without a warrant. 134 S. Ct. at 2486-87.

26

they "can turn the phone off or remove its battery," or put the phone in a "Faraday bag"[26] to protect it from radio waves and, thus, remote wiping. 134 S. Ct. at 2487. Finally, the Court clarified that in true emergencies officers may rely on other exceptions to the warrant requirement, such as exigent circumstances or taking reasonable steps to secure a scene.[27] *Id*.

The Court then considered whether an arrestee's reduced privacy interests – which supported the inspection of physical objects found on an arrestee, like the cigarette packet in *Robinson* – weighed in favor of a warrantless search of cell phone data. 134 S. Ct. at 2488. In this respect, the Court noted the "immense storage capacity" of modern cell phones that allow a person to carry personal documents and information that would fill a trunk in paper format. *Id.* at 2489. The vast quantity of personal and sensitive data stored on many cell phones could expose to government view a "broad array of private information never found in a home in any form – unless the phone is." *Id*. at 2489-91. Moreover, the Court pointed out, much digital data observed through a cell phone actually physically resides

---

[26] Faraday bags, named for "English scientist Michael Faraday[,] … are essentially sandwich bags made of aluminum foil: cheap, lightweight, and easy to use." 134 S. Ct. at 2487 (citation omitted); *see also* Department of Justice, National Institute of Justice, Electronic Crime Scene Investigation: A Guide for First Responders 14 (2d ed. Apr. 2008).

[27] 134 S.Ct. at 2487 ("[I]f officers happen to seize a phone in an unlocked state, they may be able to disable a phone's automatic-lock feature in order to prevent the phone from locking and encrypting data. Such a preventive measure could be analyzed under the principles set forth in … *[Illinois v. ]McArthur*, 531 U.S. 326, 121 S.Ct. 946, which approved officers' reasonable steps to secure a scene to preserve evidence while they awaited a warrant.").

elsewhere and is simply accessed through the phone – a fact that severely weakened any analogy to a physical container. *Id*. at 2491. The Court rejected several proposals for limited data searches incident to an arrest because they were either flawed, impractical, or contrary to the Court's preference to provide guidance through categorical rules rather than rely on *ad hoc* case-by-case balancing.[28]

2.      Application to this case

As outlined above, the evidence at issue in this case consists of three photographs of screen images of Mr. Sinclair's cell phone – a flip phone seized from him at the time of his arrest. The seizure of the phone itself is not at issue. Although the factual record is sketchy due to non-compliance with Rule 4-252, at oral argument Mr. Sinclair conceded that one photograph depicts a screen saver image that was readily apparent to Officer Stevenson when he opened the flip phone. The other two photographs of the cell phone screen apparently were the result of the officer's "scrolling" through the phone, although the record provides no details. The analysis as to the first photograph is thus distinct from that as to the other two.

---

[28] The rejected limiting principles included proposals that a warrantless search of cell phone data be permitted whenever it is reasonable to believe that the phone contains evidence relevant to the crime of arrest; that a warrantless search be restricted in scope to areas of the phone reasonably believed to have information relevant to the crime, the arrestee's identity, or officer safety; that a warrantless search be limited to the phone's call log; or that a warrantless search be limited to information that would have been available from a pre-digital counterpart, such as a wallet. 134 S. Ct. at 2491-93.

*The screen saver image*

Mr. Sinclair argues that the act of opening a flip phone is an unlawful search under *Riley*. He acknowledges that *Riley* allowed that officers may power off the phone to prevent remote wiping, and may inspect it for hidden weapons. Mr. Sinclair asserts that (1) flip phones are not susceptible to remote wiping,[29] and (2) it is impossible to hide a weapon inside a flip phone, and concludes that *Riley* does not permit an officer to physically open a flip phone seized incident to an arrest. Therefore, he argues the photograph of the screen saver image was derived from an unlawful search.

In our view, even on the very limited factual record supplemented by Mr. Sinclair's concession, the photograph of the screen saver image would be admissible under the plain view doctrine. "The plain view doctrine of the Fourth Amendment requires that: (1) the police officer's initial intrusion must be lawful … (2) the incriminating character of the evidence must be 'immediately apparent;' and (3) the officer must have a lawful right of access to the object itself." *In re David S.*, 367 Md. 523, 545, 789 A.2d 607 (2002) (citing *Wengert v. State,* 364 Md. 76, 88–89, 771 A.2d 389 (2001)).

The Supreme Court's decision in *Riley* did not distinguish between flip phones and smart phones, and did not explicitly address whether an officer may physically open a flip

---

[29] As an aside, advancing technology seems to have nullified Mr. Sinclair's argument that flip phones lack wireless capability, *see*, *e.g.*, Samsung Rugby® 4, <http://www.att.com/cellphones/samsung/rugby-4.html#sku=sku7410227> (last visited July 20, 2015).

phone without obtaining a warrant.[30] Under the categorical approach favored by the Supreme

Court in *Riley,* an officer who seizes a flip cell phone incident to an arrest may physically

inspect and secure the phone, which would include an examination of the phone and its case

for weapons, powering off the phone, and removing its batteries. Such actions would

inevitably involve physically opening a flip phone, although they would not entail a search

of its data.[31] Thus, physically opening a cell phone would not be an unlawful search under

*Riley.[32]* And a photograph of a screen saver image in plain view when the phone is

physically opened – an image that the investigator immediately recognized as the stolen item

under investigation – would not be subject to suppression.

---

[30] One of the cases decided by the Supreme Court in *Riley* involved a flip phone and the parties in that case stipulated that the phone's external screen was in plain view and therefore not subject to the motion to suppress that ultimately reached the Supreme Court. Mr. Sinclair attempts to distinguish that case on the basis that it was an exterior screen of that phone and asserts that Officer Stevenson viewed the screen saver only by opening the phone. However, the record in this case neither confirms nor contradicts the factual basis for Mr. Sinclair's distinction – a factual basis that could have been developed at a pretrial hearing. In any event, for reasons stated in the text, we believe that the officer did not conduct an unconstitutional search when he physically opened Mr. Sinclair's flip phone.

[31] The Court in *Robinson* clarified that a valid search incident to arrest authorizes the police to search evidence found on the arrestee even if it does not relate to the suspected criminal conduct. The same concept applies here – the rationale for *Riley*'s rules is to prevent remote wiping and conserve officer safety, but the rules apply regardless of whether those concerns exist with a particular cell phone. *See Robinson*, 414 U.S. at 235.

[32] At the brief hearing that was conducted in the trial court, Mr. Sinclair's counsel appeared to concede that "if the phone is just opened ... that might be permissible."

30

*The other two images*

Mr. Sinclair contends that, even if the screen saver image was lawfully obtained as evidence in plain view, the officer had no lawful justification for searching the phone's data and viewing the other two images without a warrant. He further argues that the court's error in admitting the other two photographs of the cell phone screen was not harmless.

Although the particular circumstances of Officer Stevenson's creation of the other two photographs of cell phone images are not entirely clear – due to the lack of an evidentiary hearing – they were likely the product of a warrantless navigation through the phone's photo library. Such action is not ordinarily lawful under *Riley*. Even if that were the case, because the second photograph was identical to the screen saver image, any error in admitting that duplicate image would be harmless under any standard.[33] Whether admission of the third photograph depicting a properties screen would be harmless error is a more difficult question.

An error is harmless only if the "reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). In our view, if we were to reach the issue, admission of the third picture was harmless error. Mr. Gaines stood face-to-face with the man who stole his car at gunpoint, and less than 24 hours

---

[33] *See Yates v. State*, 429 Md. 112, 120, 55 A.3d 25 (2012) (quoting *Jones v. State*, 310 Md. 569, 588-89, 530 A.2d 743 (1987)) ("Where competent evidence of a matter is received, no prejudice is sustained where other objected to evidence of the same matter is also received.").

later identified Mr. Sinclair as the carjacker with certainty, first at a distance and again from only a few feet away. Mr. Sinclair was found in close proximity to the stolen car and, when the car was blocked in, attempted to leave the area in another car. In trying to establish an alibi, he presented a different story to his probation officer shortly after the crime than he did a year later at trial. The State used the photograph images from his cell phone to corroborate the other evidence that linked him to the carjacking and the stolen vehicle – *i.e.*, the screen saver image, and the duplicate second image, depicted a custom wheel rim and fender identical in appearance and color to those of the stolen car. The third photograph, although admitted in evidence, was only briefly referenced in the State's rebuttal argument, apparently for the date ("4/30/2010") that the image was displayed. That added little to the prosecution's proof, as it was undisputed that Mr. Gaines was identified by the victim on that date in close proximity to the stolen vehicle.[34] We are satisfied, beyond a reasonable doubt, that admission of the image properties screen did not contribute to the jury's guilty verdict.

## III

### Conclusion

In failing to make his motion to suppress the three photographs of his cell phone screen within the time period and with the specificity required by the Maryland Rules, Mr. Sinclair waived that motion. If the motion had not been waived and if a pretrial hearing had

---

[34] On appeal, Mr. Sinclair argues that the prosecutor used the third image to argue that he was trying to sell the wheel rims; while the prosecutor did suggest that Mr. Sinclair planned to sell the rims, she did not single out the third image to support that argument.

established the facts as posited by Mr. Sinclair, the primary evidence obtained from the cell phone – the screen saver image that was in plain view upon physical inspection of the phone – would be admissible under the Supreme Court's decision in *Riley*. The remaining two photographs which, under the facts as posited by Mr. Sinclair, were the product of a warrantless search of the cell phone's data, would not be admissible. However, given that one of those photos was identical to the first photo and the other was of limited probative value and cumulative at best, that error was harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**